In the Matter of HARR-WOOD NURSING HOME, INC., Petitioner, v CESAR A. PERALES, as Commissioner of the Department of Social Services of the State of New York, Respondent.

Third Department, January 2, 1986

## APPEARANCES OF COUNSEL

*Fink, Weinberger, Fredman, Berman & Lowell, P. C. (Jerome T. Levy* of counsel), for petitioner.

*Robert Abrams, Attorney-General (Clifford A. Royael* and *William J. Kogan* of counsel), for respondent.

## OPINION OF THE COURT

YESAWICH, JR., J.

Petitioner is a 120-bed skilled nursing facility in Oswego County. In the rate years involved, 1976 through 1979, the facility participated in both the Federal Medicare program and the joint Federal-State Medical Assistance program (Medi-

caid). The Medicaid program is a payor of last resort. As such, it pays facilities like petitioner the balance of the cost of medical care furnished eligible Medicaid recipients only after all nonexempt resources have been exhausted. Medicare benefits are not exempt resources, indeed persons eligible for Medicaid must apply for and utilize these benefits as a condition of eligibility for Medicaid (see, Social Services Law § 366 [2] [b]). The Medicare benefits at issue are Voluntary Supplemental Benefits (part B). Part B benefits include physical therapy, oxygen and laboratory services and are termed "ancillary services" by Medicaid. During the years implicated, petitioner, though not required to, elected to provide ancillary services under the Medicaid program; the cost to petitioner of doing so was, however, reflected in a higher Medicaid rate than it would receive otherwise and payment was made to it irrespective of whether petitioner actually furnished the services.

By virtue of a "buy-in" agreement with the Federal Government, New York enrolled its Medicaid recipients who were also eligible for Medicare in part B and assumed payment of the coinsurance and deductible aspects of the part B benefit program. Medicare part B payments were received by petitioner during the years in controversy.

An audit by the Bureau of Audit and Quality Control of the Department of Social Services (Department) revealed the overlapping Medicaid and Medicare part B payments made to petitioner for ancillary services. As a result, the Department sought a refund in an amount equivalent to the Medicare part B benefits petitioner had received, $45,118.55. The facility readily agreed that a refund was due, but disputed the amount. Since the Medicare reimbursement rate for ancillary services exceeded that of Medicaid over the audit period, petitioner maintained that the refund should be computed based on the lower Medicaid rate. Petitioner also asserted that the refund amount should be reduced to reflect the State's failure to make obligatory Medicare deductible and coinsurance payments for Medicaid beneficiaries. After a hearing, respondent, the Commissioner of Social Services, upheld the Department's position. Petitioner then instituted the instant CPLR article 78 proceeding to challenge the determination.

■ Initially, petitioner argues that Medicaid is entitled to recoupment not in the amount petitioner derived from Medicare for part B payments, which were calculated at a rate considerably in excess of the Medicaid per diem rate peti-

tioner received for ancillary services, but only in the latter amount. At the outset, it is noteworthy that, when presented recently with somewhat similar circumstances in *Hallmark Nursing Center v Menaldino* (88 AD2d 1042), we ruled to the contrary.

Petitioner's decision to provide ancillary services increased its total Medicaid reimbursement rate by an amount less than the Medicare rate for such services.* However, as respondent determined, petitioner's over-all daily Medicaid rate is a single amount which covers, without distinction, the various services petitioner agreed to make available to its Medicaid recipients; that amount is based on a rate-making formula which takes into account both the direct and indirect costs of services, including, for instance, costs of utilities, maintenance, administration and capital *(see,* 10 NYCRR 86-2.10, 86-2.21). Apportionment of indirect costs attributable to ancillary services was rightly considered infeasible by respondent, for any such allocation would be arbitrary or premised on artificial distinctions. Respondent's rationale thus squares with the holding in the *Hallmark* case *(supra)* and with the statutory identification of Medicaid as payor of last resort (42 USC § 1396 [1]; *see also,* 42 USC § 1396d [a]; Social Services Law § 366 [2]; 18 NYCRR 360.9, 360.22).

Petitioner also takes exception to respondent's finding that "[b]y including the entire cost of these [ancillary] services in the per diem [Medicaid reimbursement] rate, the Health Department must, by necessity, be including that part of the cost that is to be paid by the deductible and co-insurance". The record warrants this conclusion for the Health Department's memoranda establishing reimbursement rates for individual nursing homes, including petitioner, expressly stated that the daily rates fixed are "all-inclusive" and that "no extra payments are to be made to any facility for services rendered". There is also force to respondent's claim that if the coinsurance and deductible were paid directly to the facility, it would only serve to diminish by a like amount the Medicaid reimbursement, for a lump-sum payment to the facility would

---

* Petitioner suggests the increment equates to the costs to Medicaid of its ancillary services and, thus, it should be permitted to retain the excess received from Medicare. Respondent notes that, if this premise is accepted, petitioner may be viewed as having violated Federal law by charging Medicare at a rate greater than the Medicaid rate *(see,* 42 USC § 1396h [d] [1]).

not be exempt from inclusion in the resources which reduce the cost of Medicaid (Social Services Law § 366 [2]).

Alternatively, petitioner finds arbitrariness in the State's policy of making cash payments for coinsurance and deductibles to facilities which do not provide ancillary services, but denying such direct payment to facilities like petitioner which voluntarily opted to offer these services. These two methods by which facilities receive reimbursement for these items reflect the two very different choices open to nursing homes for reimbursement for ancillary services. In one instance, for example, petitioner's Medicaid is directly involved in repaying the facility for ancillary services; in the other, the facility looks to Medicare for such reimbursement, thereby limiting Medicaid's role. This distinction justifies the disparity.

■ Nor do we find persuasive the argument that because the same person did not both hear the evidence and render the decision, petitioner was deprived of a fair hearing. Credibility was not at issue here. Indeed, the only testimony taken at the hearing involved an explanation of certain documents by petitioner's business manager and respondent credited his testimony. More importantly, petitioner points to no prejudice accruing to it because of the process employed.

■ With respect to the two-year delay between the hearing and the decision, the complexity of the issues, the absence of any substantial prejudice to petitioner, the fact that the record remained open for supplementation subsequent to the hearing, and the nature of the interest at stake—namely, a refund of public funds—convince us that the delay was not unreasonable *(see, Matter of Cortlandt Nursing Home v Axelrod,* 66 NY2d 169, 180-182).

Inasmuch as the administrative process is not gravely flawed and respondent's determination is rationally based on the record, we confirm *(see, 300 Gramatan Ave. Assoc. v State Div. of Human Rights,* 45 NY2d 176, 181; *Matter of Demisay v Axelrod,* 87 AD2d 667, 668, *lv denied* 57 NY2d 602).

KANE J. P., MAIN, WEISS and MIKOLL, JJ., concur.

Determination confirmed, and petition dismissed, with costs.