The GREENERY REHABILITATION GROUP, INC., Plaintiff,

v.

Barbara SABOL, as Commissioner of the New York City Human Resources Administration, the City of New York, and Greg Kaladjian, as Commissioner of the New York State Department of Social Services, Defendants.

Barbara SABOL, as Commissioner of the New York City Human Resources Administration, the City of New York, and Greg Kaladjian, as Commissioner of the New York State Department of Social Services, Third Party Plaintiffs,

v.

Donna E. SHALALA, as Secretary of the United States Department of Health and Human Services, Third Party Defendant.

No. 93–CV–309.

United States District Court, N.D. New York.

Dec. 28, 1993.

Bond, Schoeneck & King, Albany, NY (Hermes Fernandez, of counsel), for plaintiff.

NYC Corp. Counsel, New York City (Norma Cote, of counsel), for defendant and third party plaintiff Sabol and New York City.

New York State Attorney General, Albany, NY (Deirdre Roney, of counsel), for defendant and third party plaintiff Kaladjian.

United States Attorney's Office, Albany, NY (James C. Woods, of counsel), for third party defendant Shalala.

### MEMORANDUM–DECISION AND ORDER

McAVOY, Chief Judge.

The third party defendant Donna E. Shalala moves to dismiss the third party complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction. Two theories have been advanced in support of the said motion. First, it is alleged that the third-party complaint is not ripe for judicial review. Second, it is alleged that the State and City defendants failed to exhaust administrative remedies. Furthermore, the third party defendant has also moved to stay discovery pending the outcome of the instant motion to dismiss. Oral arguments were heard on November 8, 1993.

### I. BACKGROUND

According to the underlying complaint, the Greenery Rehabilitation Group, Inc., (hereinafter "the Greenery") is a leader in the field of traumatic brain injury treatment, and it operates facilities in several states. The Greenery entered into an agreement with the New York City Human Resources Administration (hereinafter "HRA"), an agreement which provided that the Greenery, with the approval of the New York State Department of Social Services (hereinafter "DSS"), would admit into its specialized brain injury programs New York City residents who are in need of such services and who are eligible for Medicaid. The Greenery admitted three New York City residents into its specialized brain injury programs who met the financial eligibility criteria, but for whom HRA has

refused to pay. These three patients are aliens.

Because of the high level of specialized care provided by the Greenery, the complaint states that the three named aliens could not be admitted without the prior approval of the New York State Department of Health (hereinafter "DOH"). According to the complaint, DOH did in fact approve the admission of the three aliens into the Greenery's specialized brain injury programs. The Greenery has since provided care to the three aliens, the cost of which, at the rates approved by the State of New York, amounts to $152,612.28, $213,916.10 and $181,604.76 respectively, through November 30, 1992. Plaintiff Greenery now seeks a declaration which states that the care and services provided to the three aliens have been for the treatment of emergency medical conditions, and thus, it is entitled to Medicaid reimbursement for the care provided.

The State and City defendants removed the instant case to this Court and filed a third party complaint against defendant Shalala as the Secretary of the United States Department of Health and Human Services (hereinafter "HHS"). The relief sought in the third party complaint is that if the Court determines that the cost of care for the three patients must be borne by the State Medicaid program, the Court should then determine that HHS, which is the Federal agency that administers the Medicaid program, should also bear part of that cost pursuant to Federal statutes which provide that Medicaid costs are to be divided among the Federal, State, and City governments. *See* 42 U.S.C. §§ 1396a, 1396b.

## II. STATUTORY BACKGROUND

■ Title XIX of the Social Security Act (hereinafter "the Act") establishes a jointly funded, cooperative federal-state program known as Medicaid designed to enable each State to furnish medical assistance to eligible individuals. *See Atkins v. Rivera,* 477 U.S. 154, 156–57, 106 S.Ct. 2456, 2458, 91 L.Ed.2d 131 (1986). The program, enacted in 1965, was established "for the purpose of providing federal financial assistance to States that choose to reimburse certain costs of medical treatment for needy persons." *Schweiker v. Hogan,* 457 U.S. 569, 571, 102 S.Ct. 2597, 2600, 73 L.Ed.2d 227 (1982) (quoting *Harris v. McRae,* 448 U.S. 297, 301, 100 S.Ct. 2671, 2680, 65 L.Ed.2d 784 (1980)). If a state chooses to participate in the program, it must do so in accordance with the broad framework set by the federal government through the Act. If the state satisfies these requirements, it has wide discretion in administrating its program "including the responsibility for determining the eligibility of recipients, enlisting medical service providers, and paying those providers for services rendered." *De Gregorio v. O'Bannon,* 500 F.Supp. 541, 545 (E.D.Pa.1980).

■ New York State Regulations provide that, in general, aliens lawfully admitted for permanent residence or otherwise permanently residing in the United States under color of law who meet Medicaid requirements are eligible to receive the full range of Medicaid benefits. 18 N.Y.C.R.R. § 360–3.2(f). However, aliens who meet Medicaid program requirements but who are not lawfully admitted for permanent residence, or otherwise permanently residing in the United States under color of law, or who have not been granted lawful permanent resident status under the Federal Immigration Reform and Control Act of 1986, are not eligible to receive medical assistance unless the care and services are necessary for the treatment of an "emergency medical condition." 18 N.Y.C.R.R. § 360–3.2(f)(2). The New York statutory language is substantially the same as the language of the Act. *See* 42 U.S.C. § 1396b(v).

An "emergency medical condition" is defined as

a medical condition (including emergency labor and delivery) manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in—(A) placing the patient's health in serious jeopardy, (B) serious impairment to bodily functions, or (C) serious dysfunction of any bodily organ or part.

42 U.S.C. § 1396b(v)(3). It is the interpretation of this section which is at the heart of the present litigation. The Greenery contends that the patients in question are within the statutory language. The State and City defendants contend otherwise and look to HHS for the correct interpretation of the section in question. HHS argues that it should not be part of this litigation at all.

The third party plaintiffs allege that HHS' refusal to provide guidance to DSS resulted in the instant litigation. Prior to commencing this litigation, the Greenery's attorney contacted the State agency concerning the Greenery's claim that Medicaid should pay for the cost of the chronic care it was providing to the three patients in question. After receiving the inquiry, DSS referred the issue to HHS, and requested that the Federal agency evaluate the circumstances of the patients in question and give guidance concerning whether Medicaid should pay for this care. The third party plaintiffs allege that HHS refused to give such guidance.

HHS now moves to dismiss the third party complaint against it on the ground that this court lacks subject matter jurisdiction either because the claim against it is not ripe, or because the State and City defendants have failed to exhaust administrative remedies. HHS also moves to stay discovery pending the outcome of the motion to dismiss.

## III. ANALYSIS

Although HHS is silent as to the basis for its motion to dismiss, the court assumes that the motion is made pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure because HHS has indicated that the third party complaint should be dismissed "for lack of subject matter jurisdiction."

■ As the Supreme Court explained in *Bender v. Williamsport Area School District,* 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986), "[f]ederal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." Therefore, a court has an obligation to satisfy itself of its own jurisdiction prior to addressing the merits of the claims in question. *See id.*

■ A party may move to dismiss for lack of subject matter jurisdiction at any time during the course of an action. *See John B. Hull, Inc. v. Waterbury Petroleum Products, Inc.,* 588 F.2d 24, 27 (2d Cir.1978). Once challenged, the burden of establishing subject matter jurisdiction rests on the party asserting the jurisdiction. *Thomson v. Gaskill,* 315 U.S. 442, 62 S.Ct. 673, 86 L.Ed. 951 (1942). On such motions, the court must construe the complaint broadly and liberally, and in conformity with the principles set forth in Rule 8(f) of the Federal Rules of Civil Procedure.

■ When subject matter jurisdiction is challenged pursuant to Rule 12(b)(1), the movant and the pleader may use affidavits and other pleading materials to support and oppose such motions. *Kamen v. American Telephone & Telegraph Co.,* 791 F.2d 1006, 1011 (2d Cir.1986). The courts, when resolving claims that they lack subject matter jurisdiction, have acted in a fashion suggestive of Rule 56(f): "they have required that the party asserting jurisdiction be permitted discovery of facts demonstrating jurisdiction, at least where the facts are peculiarly within the knowledge of the opposing party." *Kamen,* 791 F.2d at 1011; *see Investment Properties International, Ltd. v. IOS, Ltd.,* 459 F.2d 705, 707–08 (2d Cir.1972); *Williamson v. Tucker,* 645 F.2d 404, 414 (5th Cir.1981). Since HHS has contended that this court lacks subject matter jurisdiction, it is incumbent for the State and City defendants to demonstrate the jurisdiction of this Court in order for them to defeat HHS' motion to dismiss.

HHS has advanced two theories for its contention that this Court lacks subject matter jurisdiction. First, HHS contends that the third party complaint presents neither a justiciable case or controversy "ripe" for judicial review, nor an allegation that any event occurred which would give rise to a "final agency action" by HHS creating a controversy between HHS and the State. Second, HHS contends that subject matter jurisdiction is lacking due to the State and City defendants' failure to exhaust administrative remedies established by the Medicaid provi-

sions of the Social Security Act for determining claims for federal financial participation (hereinafter "FFP").

The State and City defendants oppose HHS' instant motion to dismiss on two grounds. They allege that, at a minimum, discovery should be allowed so they may demonstrate subject matter jurisdiction of this Court. Additionally, they allege that even without discovery, they could establish subject matter jurisdiction because the case is ripe for judicial review and that they are not required to exhaust administrative remedies as set forth under the Act.

### A. DISCOVERY

The State and City defendants assert that HHS' motion to dismiss should be denied because they are unable to thoroughly respond to such a motion until the discovery requests addressed to HHS have been answered.

Searching the record submitted to this Court for review, it is revealed that the State defendant, prior to filing the third party complaint, had attempted to obtain HHS' position on the interpretation of § 1396b(v). Such an attempt was made to no avail. Unable to obtain the information voluntarily, the State sought certain discovery consisting of three interrogatories, one document request and two notices of deposition from HHS, all seeking information on whether Greenery should be entitled to Medicaid payment under § 1396b(v). These discovery requests have yet to be answered.

■ As stated earlier, in a motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction, the party opposing the motion must be allowed discovery of facts demonstrating jurisdiction *"at least where the facts are peculiarly within the knowledge of the opposing party." Kamen,* 791 F.2d at 1011. The State defendant alleges that if and when HHS complies with the discovery requests, the State will be able to establish subject matter jurisdiction.

HHS' claim that the third party complaint is merely "hypothetical" may be cured if the discovery requests are fully complied with. At the present moment, the State is in no position to respond to the argument that it should pay the cost of medical care for the patients in question. Such knowledge is "particularly within the knowledge of" HHS. If the State can tap into that knowledge, it may well be able to refute the present Rule 12(b)(1) motion to dismiss since such knowledge will reveal HHS' position on the issue. Thus, the answer to the question of ripeness may hinge on the information gained through discovery: for example, if discovery reveals that the patients in question are indeed covered under the Act, then the assertion that the third party complaint is merely hypothetical is no longer a viable assertion. If such is the case, then HHS, under the Act, will be required to pay a portion of the medical bills, and thus, a concrete injury can be demonstrated and subject matter jurisdiction of this Court can be established.

HHS' own failure to affirmatively answer inquiries made as to the interpretation of the section is what is contributing to the argument that the present third party claim is purely hypothetical. The State, armed with the answers to its discovery requests, may be able to demonstrate subject matter jurisdiction. Thus, HHS cannot escape the grips of subject matter jurisdiction by simply failing to comply with discovery requests which are designed to establish exactly such jurisdiction.

This Court is mindful that such scenarios are speculative at this time because it is uncertain as to what discovery will eventually reveal. This is why the State and City defendants should be given a chance to take discovery to explore the issue further. Without such discovery, it would be wholly inappropriate for this Court to determine the issue of subject matter jurisdiction. Consequently, HHS' motion to dismiss must be denied at the present time.

### B. EXHAUSTION OF ADMINISTRATIVE REMEDIES

HHS has advanced another theory for its motion to dismiss. It contends that the State and City defendants have failed to exhaust administrative remedies, and therefore, subject matter jurisdiction is lacking in the instant third party claim against HHS.

According to HHS, administrative remedies will be exhausted and this Court will have subject matter jurisdiction if, and only if, the State takes the following steps: defend the present lawsuit brought by Greenery; if the State loses, then pay the judgment; request federal financial participation from HHS; obtain HHS' determination on the request; if request is denied, then appeal that denial to the agency's Departmental Appeals Board; if the appeal is unsuccessful, then the State may initiate a new proceeding in the district court.

■ The doctrine of exhaustion of administrative remedies provides that "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938). Since the present issue of whether the State can implead HHS on an unpaid Medicaid claim against the State without exhausting its administrative remedies is one of first impression, it is vital that we decide on the applicability of the doctrine with an understanding of the purpose behind such a doctrine.

■ The most common application of the exhaustion doctrine is in cases where the relevant statute provides that certain administrative procedures shall be exclusive. *Id.* The doctrine arises from compelling policy considerations of efficiency and agency autonomy. *See, e.g., Health Equity Resources, Inc. v. Sullivan,* 927 F.2d 963 (7th Cir.1991); *Wayside Farms, Inc. v. United States Dept. of Health and Human Services,* 663 F.Supp. 945 (N.D.Ohio 1987). The Supreme Court in *McKart* stated that the "primary purpose [of the doctrine] is, of course, the avoidance of premature interruption of the administrative process." *McKart v. United States,* 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969).[1] Since the agency is created for the purpose of applying a statute in the first instance, "it is normally desirable to let the

agency develop the necessary factual background upon which decisions should be based. And since agency decisions ... frequently require expertise, the agency should be given the first chance to ... apply that expertise." *Id.* at 193–94, 89 S.Ct. at 1662–63. The *McKart* Court further stated that the doctrine gives the agency an opportunity to establish a final decision without premature interruption so that it may discover and correct its own errors. *Id.* at 194, 89 S.Ct. at 1663. The complaining party may be successful in the administrative process, and as a result, the courts may never have to intervene. *Id.* at 194–95, 89 S.Ct. at 1663. Thus, the exhaustion requirement serves to reduce the possibility that "frequent and deliberate flouting of administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures." *Id.* at 195, 89 S.Ct. at 1663.

■ With these considerations in mind, we now look to the facts of our case. It is apparent that the circumstances of the instant case do not warrant the application of the exhaustion doctrine for several reasons.

The primary concern which the doctrine seeks to redress is unnecessary judicial intervention. In our instant case, judicial intervention has already occurred. The suit brought by Greenery against the State and City defendants inevitably forces this Court to interpret sections of the Social Security Act dealing with Medicaid. This determination must be made with or without HHS. Judicial intervention is inescapable, and thus, the concern of unnecessary judicial intervention is not present. Moreover, the doctrine's concern of allowing the agency to develop the facts prior to judicial review and giving the agency a chance to bring its expertise to bear on the issue is also not present in the case at bar. In fact, such concerns weigh heavily in favor of not applying the doctrine to the instant motion brought by HHS. As stated earlier, the Court will inevitably be forced to interpret sections of the Act with or without

---

1. HHS heavily relies on this case to support its contention that the State and City defendants must exhaust administrative remedies prior to bringing suit against HHS. A closer examination of the case, however, reveals that the case actually supports a finding inapposite to HHS' position. It supports a finding that exhaustion of administrative remedies is not a prerequisite to bringing a suit against HHS.

the help of HHS. By allowing HHS to be a third party defendant, HHS' expertise can be utilized to interpret the very sections which HHS was given authority to enforce.

Additionally, a mandate that the State exhaust all administrative remedies prior to bringing suit against HHS would foster judicial redundancy and inconsistency. For example, if HHS is not a party to the instant action, this Court will be forced to determine whether the patients in question are aliens entitled to Medicaid benefits under 42 U.S.C. § 1396(v). If it is determined that they are within the section, then the State will be forced to pay for their medical expenses. The State and City will then have to request for FFP from HHS. If HHS determines that the patients were not within the section of the Act, then HHS will be able to flout this Court's decision and deny FFP to the State and City defendants. Thereafter, the State and City Defendants would be forced to initiate a new proceeding in federal court on the exact same issues fronting this Court today. Such result would smack of judicial inefficiency and is wholly contrary to the purpose of the exhaustion doctrine. It is abundantly apparent that the concerns of the exhaustion doctrine is better served by allowing the instant third party complaint to stand.

Consequently, it is this Court's determination that exhaustion of administrative remedies is not a prerequisite for the State and City defendants to bring a third party complaint against HHS.[2]

## IV. CONCLUSION

For the stated reasons, HHS' motion to dismiss pursuant to Rule 12(b)(1) is dismissed at this time to allow the State and City defendants to obtain discovery. Furthermore, HHS is directed to respond to outstanding discovery requests within 30 days.[3] The motion to stay discovery pending the outcome of the present motion to dismiss has been mooted since the motion to dismiss has now been determined.

IT IS SO ORDERED.

---

2. There are no cases paralleling the case at bar. There are, however, several cases where HHS was a third party defendant in Medicaid related cases. *See, e.g., Lamore v. Ives,* 977 F.2d 713 (1st Cir.1992); *Whitehouse v. Ives,* 736 F.Supp. 368 (D.Me.1990); *Granito v. Sunn,* 594 F.Supp. 410 (D.Hawaii 1984). In these cases, the question of exhaustion of administrative remedies was a non-issue. HHS was a third party defendant in these lawsuits, but no one questioned whether the State had to exhaust administrative remedies prior to bringing its third party complaint against HHS.

3. All of the discovery requests were made close to five months ago.