**STATE of NEW YORK, Plaintiff,**

v.

**LUTHERAN CENTER FOR THE AGING, INC., Defendant.**

**LUTHERAN CENTER FOR THE AGING, INC., Third Party Plaintiff,**

v.

**Donna E. SHALALA, as Secretary of the United States Department of Health and Human Services, Third Party Defendant.**

**No. CV 96–4056 (ADS).**

United States District Court, E.D. New York.

Feb. 21, 1997.

Dennis C. Vacco, Attorney General, State of New York, Medicaid Center Fraud Unit, Heloisa G. Rapaport, Special Assistant Attorney General, New York City, for State of New York.

Cullen & Dykman, Garden City, NY, (Peter Mastaglio, of counsel), for Defendant–Third Party Plaintiff.

Zachary W. Carter, United States Attorney by Richard M. Molot, Assistant United States Attorney, Brooklyn, NY, for Third–Party Defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge:

This action arises from the allegations of the plaintiff, the State of New York (the "State" or "plaintiff"), against the defendant-third party plaintiff, Lutheran Center for the Aging, Inc. ("LCA" or the "defendant" or "third party plaintiff") for wrongfully obtaining Medicaid benefits under New York State law. The defendant in turn alleges that to the extent that it is found liable for any Medicaid benefits, it is entitled to reimbursement from the Secretary of Health and Human Services (the "Secretary" or "third party defendant") in the form of Medicare benefits.

Presently before the Court are two motions: (1) the Secretary moves to dismiss the third party complaint pursuant to Fed. R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction; and (2) the State moves to remand this action, pursuant to 28 U.S.C. § 1447(c), to the New York Supreme Court, Suffolk County, where it was originally filed.

LCA opposes both motions, maintaining that this proceeding is properly before the Court.

## I. *Background*

The following facts are taken from the complaint. The New York State Department of Social Services ("DSS") is a state agency charged with implementation and administration of New York's Medicaid program under which eligible individuals are provided with health care benefits. DSS is also responsible for the licensing and supervision of Medicaid health care providers. In this capacity, pursuant to state law and regulations, DSS has established standards and rates of reimbursement for the services provided.

The defendant, LCA, is a Medicaid and Medicare provider located in Smithtown, New York. According to the complaint, at all times relevant to this litigation, LCA operated and maintained a long term home health care program ("LTHHC"). The operation of an LTHHC requires state certification.

According to the plaintiff, on or about January 1, 1992 until August 31, 1995, the defendant was authorized under New York's Medicaid program to supply long term home health care services to patients enrolled in the LTHHC who were "both Medicaid recipients and Medicare beneficiaries." Further, the State pleads that the defendant knew that "in the case of individuals eligible to receive Medicare benefits under the LTHHC, Medicaid was the payor of last resort and Medicare was required to be billed first." This "Medicare Maximization" was implemented to minimize the burden on Medicaid or on a private individual where Medicare would be otherwise available.

When submitting budgets to DSS for approval and billing Medicaid for services provided for LTHHC clients, the defendant is obligated to set forth whether the Medicaid recipient has other insurance available, such as Medicare. If Medicare is obtainable, that service must be billed first. Nevertheless, according to the State:

> ... defendant LCA submitted or caused to be submitted numerous claim forms to DSS in which payments were sought for providing services covered by Medicaid, when in fact LCA knew, but omitted from such claim forms, that these individuals were Medicare-eligible and the services were covered by Medicare under LTHHC.

Compl. ¶ 8. Based on this alleged unlawful conduct, the State maintains that DSS reimbursed the defendant in the sum of $118,-912.61 for Medicaid benefits to which LCA was not entitled.

As a result, on July 11, 1996, the State filed a complaint in New York Supreme Court, Suffolk County alleging four causes of action for: (1) moneys had and received; (2) violation of New York Executive Law § 63–c; (3) unjust enrichment; and (4) violation of New York Social Service Law § 145–b.

On August 27, 1996, the defendant filed its notice of removal to this Court based on federal question jurisdiction. According to LCA, this action is governed by Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 et seq. (the "Medicare Statute") and Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 et seq. (the "Medicaid Statute").

On August 28, 1996, the defendant filed its Answer and on September 5, 1996, LCA filed a third party complaint against the Secretary of Health and Human Services. In its third party action LCA alleges that in order for the State to succeed on its claims, it must first establish that the individual clients were entitled to Medicare benefits under federal law. Accordingly, to the extent that LCA must repay the State Medicaid benefits, the defendant-third party plaintiff will be entitled to Medicare benefits from the Secretary, either by statute, or under a theory of unjust enrichment.

As stated above, presently before the Court are two motions. The Secretary moves to dismiss the third party complaint pursuant to Fed.R.Civ.P. 12(b)(1), for lack of subject matter jurisdiction. The State moves pursuant to 28 U.S.C. § 1447(c) to have this case remanded back to New York Supreme Court, also arguing that there is no basis for federal subject matter jurisdiction. For the sake of a clear record, the Court will address the Secretary's motion first.

## II. *Discussion*

### A. *The Secretary's motion to dismiss*

The Secretary moves to dismiss the third party complaint for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1). The third party complaint alleges that in the event LCA is found liable to the State for damages, the defendant will be entitled to recover from the Secretary for the long term home health care services at issue under Medicare. *See* 42 U.S.C. § 1395 et seq.

Medicare provides a federally subsidized health insurance program primarily for the aged and disabled and is comprised of two major components. *See id.* Part A provides medical insurance coverage for hospital treatment, home health care, and post hospital extended care services. 42 U.S.C. §§ 1395c–1395e. Part B is a voluntary supplementary medical insurance program, which generally reimburses participants for 80 percent of the reasonable charges for certain other health care services, including physician's services, drugs, medical supplies, x-rays and laboratory tests. *See* 42 U.S.C. §§ 1395j–1395m, 1395x(s). According to the Secretary, which LCA does not dispute, the third party complaint alleges claims under Part A.

The Medicare statute authorizes the Secretary to determine which claims are covered by the statute and to promulgate regulations toward this end. *See* 42 U.S.C. § 1395ff(a). The statute further permits the Secretary to contract with private organizations referred to as "fiscal intermediaries" whose responsibilities include processing claims to determine whether they are covered by Medicare and if so, the amount of Medicare payment. 42 U.S.C. § 1395h; 42 C.F.R. §§ 421.100(a), 421.103, 421.200(a). The conditions under which payment is granted or denied are not relevant to the Court's decision.

A fiscal intermediary's determination regarding Medicare coverage is final unless the provider requests reconsideration within 60 days. 42 U.S.C. § 1395ff(b), (incorporating by reference 42 U.S.C. § 405(b)); 42 C.F.R. § 405.708(b), 405.710(b), 405.711. A determination upon reconsideration becomes final

unless the provider requests a hearing before an administrative law judge ("ALJ") and the amount in controversy is at least $100. *See* 42 U.S.C. § 405(b), 1395ff(b)(2)(A), 42 C.F.R. §§ 405.701, 405.716, 405.720, 405.722. If unsatisfied with the ALJ's decision, the provider may seek review by the Appeals Council. *See* 42 C.F.R. §§ 405.701(c), 405.724; 20 C.F.R. Part 404, Subpart J. Judicial review by the federal district court after an Appeals Council decision is possible where the amount in controversy is at least $1000. 42 U.S.C. § 1395ff(b)(2)(A); *see also Heckler v. Ringer,* 466 U.S. 602, 606–07, 104 S.Ct. 2013, 2017–18, 80 L.Ed.2d 622 (1984) (summarizing this entire process). This avenue is the only path to judicial review in the federal courts. *See* 42 U.S.C. § 1395ii (incorporating 42 U.S.C. § 405(h)); *see also Ringer,* 466 U.S. at 615, 104 S.Ct. at 2021–22; *Manakee Prof'l Med. Trans. Serv. v. Shalala,* 71 F.3d 574, 578 (6th Cir.1995) ("Section 1395ii of the Medicare Act incorporates 42 U.S.C. § 405(h) of the Social Security Act, in which it is explicitly stated that § 405(g), to the exclusion of 28 U.S.C. § 1331, is the sole avenue for judicial review for claims 'arising under' the [Medicare] Act"). In *Ringer,* the Supreme Court broke down these exhaustion of remedies requirements into two parts: (1) presentation of the claim to the Secretary, which is "nonwaivable;" and (2) full pursuit of the administrative remedies prescribed by the Secretary, which is waivable. *See Ringer,* 466 U.S. at 617, 104 S.Ct. at 2022–23; *Abbey v. Sullivan,* 978 F.2d 37, 43 (2d Cir. 1992).

Applying these standards for seeking judicial review, the Court finds that it lacks subject matter jurisdiction over LCA's claims against the Secretary. The third party complaint does not allege that LCA's claims were ever presented to the fiscal intermediary for resolution or litigated through any other stage of the administrative process. Failure to present the claims to the Secretary, a jurisdictional requirement, operates as a bar to judicial review. *See Abbey,* 978 F.2d at 43. Further, the Court notes that there is no indication that the Secretary has waived the second portion of the exhaustion requirement, namely that the claimant

"pursue fully" his administrative remedies. *See Ringer* 466 U.S. at 617, 104 S.Ct. at 2022–23. Accordingly, the Secretary's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction is granted.

■ In reaching this conclusion, the Court notes LCA's argument that it is unable to present a claim to the Secretary because it is not clear whether the services at issue are covered by the Medicare Statute. However, as the Secretary correctly points out, this argument was rejected in *Ringer,* where the Supreme Court reasoned that a claim for future benefits "must be construed as a 'claim arising under' the Medicare Act." *Ringer,* 466 U.S. at 621, 104 S.Ct. at 2025. Accordingly, these claims are subject to the same exhaustion requirements as those for medical expenses already incurred. As a result, regardless of whether the services at issue are ultimately determined to be covered by Medicare, they still must be litigated through the administrative process.

■ Finally, the Court distinguishes the decision *Greenery Rehabilitation Group, Inc. v. Sabol,* 841 F.Supp. 58 (N.D.N.Y.1993), relied on by LCA. The substantive issue in *Greenery* was whether the plaintiff, the Greenery Rehabilitation Group, Inc. ("Greenery"), was entitled to Medicaid reimbursement for services provided to three "aliens" as treatment for "emergency medical conditions." The critical distinguishing feature of *Greenery* is that the court in that case was addressing the Secretary's motion to dismiss claims brought pursuant to the Medicaid, not the Medicare statute. The statutory requirements with respect to exhaustion of administrative remedies for Medicare claims do not exist under the Medicaid Statute. Accordingly, this Court does not have the same discretion to waive the exhaustion requirements as the court did in *Greenery* and the third party complaint in this case must be dismissed.

## B. *The State's motion to remand*

The plaintiff moves to remand the case back to the state court pursuant to 28 U.S.C. § 1447(c). As stated above, on July 11, 1996 the State filed its original complaint in the New York Supreme Court, Suffolk County. On August 27, 1996, the defendant removed the case pursuant to 28 U.S.C. § 1441 pursuant to this Court's federal question jurisdiction. *See* 28 U.S.C. § 1331.

### 1. *The standard for removal*

■ "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant ... to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a); *see also Lupo v. Human Affairs Int'l, Inc.,* 28 F.3d 269, 271 (2d Cir.1994) ("[a] civil action filed in state court may be removed by the defendant to federal district court if the district court has original subject matter jurisdiction over the plaintiff's claim"). Subject matter jurisdiction may be based on a federal question, *see* 28 U.S.C. § 1331, or diversity of citizenship. *See* 28 U.S.C. § 1332. Removal statutes are to be strictly construed however, and the burden of establishing that a case falls within the Court's removal jurisdiction falls upon the removing party, in this case LCA. *See Boyer v. Snap-on Tools Corp.,* 913 F.2d 108, 111 (3d Cir.1990), *cert. denied,* 498 U.S. 1085, 111 S.Ct. 959, 112 L.Ed.2d 1046 (1991); *Greenfield v. National Westminster Bank USA,* 846 F.Supp. 302, 304 (S.D.N.Y.1994); *see also Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1095 (11th Cir.1994) ("removal statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand"). LCA removed this case to federal court based on the court's federal question subject matter jurisdiction.

### 2. *Federal question jurisdiction*

■ Pursuant to 28 U.S.C. § 1331, the district courts have original jurisdiction over "all civil actions arising under the Constitution, laws or treaties of the United States." Where the defendants' attempt to remove a case is predicated upon federal question jurisdiction, the "well-pleaded complaint rule" governs. *See Caterpillar Inc. v. Williams,*

482 U.S. 386, 392, 107 S.Ct. 2425, 2429–30, 96 L.Ed.2d 318 (1987), citing, *Gully v. First Nat'l Bank,* 299 U.S. 109, 113, 57 S.Ct. 96, 97–98, 81 L.Ed. 70 (1936). Moreover, where there may be both federal and state law claims available, the plaintiff is free to ignore his federal claims in favor of his state claims, which he may pursue in state court. *Derrico v. Sheehan Emergency Hosp.,* 844 F.2d 22, 27 (2d Cir.1988) ("[I]t is well settled that a plaintiff as 'master of the complaint' may preclude removal by electing to disregard an available federal dimension of a claim and asserting only a distinct state law cause of action"); *Travelers Indem. Co. v. Sarkisian,* 794 F.2d 754, 758 (2d Cir.), *cert. denied,* 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 253 (1986) ("It has been the law for decades that the party who brings a suit is master to decide what law he will rely upon. . . .") (internal quotation omitted); *Reed v. Cohen,* 876 F.Supp. 25, 27 (E.D.N.Y.1995) ("the plaintiff is the master of the claim; he or she may avoid federal jurisdiction by the exclusive reliance on state law") (internal quotation omitted).

 This is not to say that the Court is bound by the plaintiff's characterization of her own claims. *See Greenfield,* 846 F.Supp. at 305. Where a complaint initially appears to be grounded in state law but is actually "federal in nature" and "disguised by the plaintiff's artful pleading," the case may still be removed. *In re Agent Orange Product Liability Litigation,* 996 F.2d 1425, 1430 (2d Cir.1993), citing, 14A Charles A. Wright et al., Federal Practice and Procedure § 3722 at 266–75 (2d ed.1985); *see Reed,* 876 F.Supp. at 28, citing, *Sarkisian,* 794 F.2d at 758.

### 3. *Jurisdiction over the State's claims*

The defendant argues that this Court has jurisdiction over the State's claims because the allegations contained in the complaint "are governed by Title XVIII of the Social Security Act, 42 U.S.C. § 1395 et seq. [sic] (commonly known as the 'Medicare Statute'), and Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 et seq. [sic] (commonly known as the 'Medicaid Statute')." Affidavit of Peter Mastaglio, Nov. 26, 1996 ("Mastaglio Aff.") ¶ 2. In fact, LCA characterizes the State's claims as follows:

The gravamen of the State's Complaint, that Lutheran received Medicaid reimbursement payments from the State in excess of the amount to which it was actually entitled since the reimbursement for such services were covered by Medicare, is based upon federal law. The State's attempt to disguise the causes of action alleged in its Complaint as those arising under state law, specifically New York State Social Services Law § 145–b and Executive Law 63–c, is unpersuasive. The statutes cited by the State simply enable the State to enforce its rights and remedies as granted to it by the Medicare Act and the Medicaid Act, both federal statutes. The underlying causes of action do not arise out of any state statutes, but rather under the federal Medicaid Statute.

Mastaglio Aff. at ¶ 10. According to the defendant, the State claims that Lutheran improperly submitted claim forms to DSS without first submitting the claims to Medicare as required under the Medicare Maximization program. In order to determine which claims should have first been submitted to Medicare, the State would "necessarily have to look at the Medicare statute, the Medicaid statute and the federal implementing regulations." *Id.* at ¶ 12. Further, LCA notes that the State brings this action, in part, on behalf of the Secretary because the Medicaid Statute and related regulations require the State to refund to the federal Health Care Financing Administration ("HFCA") its share of the overpayments. *Id.* at ¶¶ 13–14. The Court disagrees.

On this subject, the Court finds instructive the recent well reasoned decision in *Massachusetts v. Philip Morris Inc.,* 942 F.Supp. 690 (D.Mass.1996). At issue in *Philip Morris* was whether the district court had subject matter jurisdiction over the state's claims brought in state court under state law, including unjust enrichment, which the plaintiff claimed rendered third parties liable for medical expenses of a person who had received medical assistance in the form of Medicaid. *Id.* at 692 (referring to Mass.Gen.L. ch. 118E, § 22; 1994 Mass.Acts, ch. 60

§ 276). The defendant removed the action arguing that "claims to recover benefits paid under the Medicare program are, by their nature and regardless of what they are called, claims that arise under federal law" and that the United States, which would be entitled to a share of the recovery as "an unnamed plaintiff," confers jurisdiction on the federal district court pursuant to 28 U.S.C. § 1345. *Id.*

As a preliminary matter, the *Philip Morris* court recognized that the Medicaid Statute, 42 U.S.C. §§ 1396 et seq., provides a cooperative federal-state program to help provide medical services to eligible individuals and families. *Id.* The federal and state governments share the costs of the program and the states are required to comply with the federal statutes and regulations. *Id.*

Participating states must submit a plan to the Secretary for approval. *Id.*, citing, 42 U.S.C. § 1396. Further, the federal statute requires individuals who receive benefits to assign to the State any rights to payment for medical care from third parties. *Id.* at 693, citing, 42 U.S.C. §§ 1396k(a)(1)(A), (B), 1396a(a)(45).

In deciding to remand the case, the district judge held that,

> [v]indication of the rights that Massachusetts' claims under its own statutory and common law will not turn on any construction of federal law. Nor is any proposition of federal law an essential element of any of Massachusetts' claims.... Though the federal statute requires a State to enforce such third party liability where it may be found, Title XIX does not establish any ground for such liability, nor does it even require that any ground for liability be established by the State.
>
> \* \* \* \* \* \*
>
> ... [T]here is no element of proof in the asserted claims that comes from a source of federal law.

*Id.* at 694.

Further, the Massachusetts District Court recognized that where a federal statute mandates a contract, a claim based on that contract will not constitute a basis for federal question jurisdiction. *See Philip Morris,* 942 F.Supp. at 695, citing, *Jackson Transit Auth. v. Local Div. 1285, Amalgamated Transit Union,* 457 U.S. 15, 29, 102 S.Ct. 2202, 2210, 72 L.Ed.2d 639 (1982). Indeed, this Court reached a similar conclusion in *Foschi v. United States Swimming, Inc.,* 916 F.Supp. 232, 240 (E.D.N.Y.1996) ("the Court finds that there is also no basis for invoking [federal] jurisdiction over a breach of contract claim based on the [defendant United States Olympic Committee's] bylaws simply because the contract provisions at issue may be the result of a statutory requirement"). Based on this review, the *Philip Morris* court concluded that "[n]othing in [the Medicaid Statute] suggests that Congress intended that state suits to recover Medicaid funds from liable third parties should be thought of as presenting federal, rather than state, claims." *Philip Morris,* 942 F.Supp. at 696. As a result, the state's motion to remand was granted. *Id.*

In reaching its conclusion, the court relied on the First Circuit's decision in *Inter–American Univ. of Puerto Rico, Inc. v. Concepcion,* 716 F.2d 933 (1st Cir.1983). In that case, Inter–American University sought to collect loan money distributed under the National Direct Student Loan program ("NDSL"). *See* 20 U.S.C. §§ 1087aa–1087ii. Inter–American University claimed that federal subject matter jurisdiction was present because the Department of Education regulations required participating institutions to take steps to collect overdue loans. *See* 34 C.F.R. §§ 674.1–.59. In dismissing the case for lack of subject matter jurisdiction, the First Circuit concluded that despite the fact that the loans were derived in part from federal contributions, the suit to collect the loans did not give rise to a federal question. "It [was] the nature of the action before the court, not the nature of the loan program, that establishes the existence or absence of federal jurisdiction." *Inter–American Univ.* 716 F.2d at 934.

█ Following the decisions in *Philip Morris* and *Inter–American Univ.,* the Court finds that it lacks subject matter jurisdiction over the State's claims. The only support the Court has discovered in the Med-

icaid Statute for recovery of overpayments from health care providers is set forth at 42 U.S.C. § 1396a(a)(25). Section 1396a(a)(25) states in relevant part that a state plan for medical assistance provides that the state agency responsible for plan administration must

(A) ... take all reasonable measures to ascertain the legal liability of third parties (including health insurers, group health plans ... service benefit plans, and health maintenance organizations) to pay for care and services available under the plan [and] ...

* * * * * *

(B) that in any case where such a legal liability is found to exist after medical assistance has been made available on behalf of the individual and where the amount of reimbursement the State can reasonably expect to recover exceeds the cost of such recovery, the State or local agency will seek reimbursement for such assistance to the extent of such legal liability.

42 U.S.C. § 1396a(a)(25)(A), (B); *see also* 42 C.F.R. § 433.215 (which recognizes a state's obligation to seek recovery from third parties and the effect of such recovery on the allocation of federal funds). The federal statute also empowers the State agency to seek recovery of Medicaid overpayments that were wrongfully obtained. *See* 42 U.S.C. § 1396b(q).

However, neither the statute nor the regulations provide the *grounds* for liability. *See Philip Morris*, 942 F.Supp. at 694. Any basis for liability turns on an interpretation of state law. *See id; cf. Department of Soc. Servs. v. Bowen*, 846 F.2d 129, 131 (2d Cir. 1988) (with respect to Medicaid, "New York State law complements the federal scheme"); *Maryland v. Philip Morris Inc.*, 934 F.Supp. 173, 177–78 (D.Md.1996) (recognizing that the requirements of 42 U.S.C. §§ 1396a(a)(25) and 1396k do not necessarily give rise to federal question jurisdiction and granting state's motion to remand); *Louisiana Extended Care Ctrs. v. Goux*, Civ. A. Nos. 94–3036, 95–0111, 1995 WL 155673 (E.D.La. Apr. 5, 1995) (granting motion to remand case where claims between the parties were governed by state law even though

those entities operated within the framework of the Medicare and Medicaid Statutes).

The mechanism governing Medicaid in New York is found in the State's Social Services Law and regulations and DSS is the sole agency authorized to administer the State's Medicaid program. *See* N.Y.Soc. Servs.L. § 363–a(1); *Senape v. Constantino*, 93 Civ. 5182 (SS), 1995 WL 29502 (S.D.N.Y. Jan. 26, 1995). Reimbursement for the provision of long term home health care is governed by New York Social Services Law, N.Y.Soc.Servs.L. § 367–c, the objective of which is to provide a "comprehensive program of medical assistance for needy persons ... throughout the state." N.Y.Soc.Servs.L. § 363. DSS is also charged with developing and implementing the regulations necessary to effectuate the medical assistance plan, must report to the Secretary as federal law requires, and is responsible for:

(a) determining eligibility for care and services pursuant to this title and consistent with standards established by the commissioner of the department of health and, as authorized by such commissioner, for hearing appeals and making findings and recommendations relating thereto; [and]

(b) auditing payments to providers of care, services and supplies under the medical assistance program[.]

* * * * * *

N.Y.Soc.Servs.L. § 364(1). However, "[n]o social services district shall make payments pursuant to [the Medicaid statute] for benefits available under [the Medicare statute] without documentation that [the Medicare] claims have been filed and denied." N.Y.Soc. Servs.L. § 367–c(7) (footnotes omitted).

Further, DSS is responsible for paying health care providers directly. N.Y.Soc. Servs.L. § 367–b(2). This reimbursement comes from the state treasury. N.Y.Soc. Servs.L. § 368–a(3)(b). Payments are made after DSS approves the expenditure and to the extent the federal funds are applied, they are disbursed by DSS. N.Y.Soc.Servs.L. § 368–a.

The State is "solely responsible for establishing eligibility requirements for recipients,

provider qualifications, rates of payment, [and] investigation of suspected fraud and abuse...." N.Y.Soc.Servs.L. § 367–b(8). "Recovery and Withholding of Payments and Overpayments" is addressed in the state regulations at 18 N.Y.C.R.R. Part 518. Section 518.3(a) provides that DSS "may require repayment from the person submitting an incorrect or improper claim, or the person causing such claim to be submitted, or the person receiving payment for the claim." 18 N.Y.C.R.R. § 518.3(a); see also 18 N.Y.C.R.R. § 515.9 (providing for recovery of overpayments). Recoupment of such overpayments may include interest accrued thereon and DSS is entitled to initiate civil proceedings to recover any overpayments. 18 N.Y.C.R.R. §§ 518.4, 518.5.

Based on these provisions, and consistent with *Philip Morris,* the Court now finds that "[v]indication of the rights that [the State] claims under its own statutory and common law will not turn on any construction of federal law. Nor is any proposition of federal law an essential element of any of [the plaintiff's] claims." *Philip Morris,* 942 F.Supp. at 694. The State's common law claims for moneys had and received and unjust enrichment, and statutory claims pursuant to New York Social Services Law § 145–b(1) and Executive Law § 63–c, are all grounded in the elaborate mechanism provided under the State's Social Services Law.

According to the complaint, LCA submitted false claim forms to DSS to obtain Medicaid payments. The State alleges that the defendant intentionally failed to advise DSS that the individuals receiving the long term home health care services provided by LCA were also Medicare beneficiaries, which would render Medicaid the payor of last resort. See N.Y.Soc.Servs.L. § 366(2)(b)(1) ("[a]ny person who is eligible for, or reasonably appears to meet the criteria of eligibility for, benefits under [the Medicare Statute] shall be required to apply for and fully utilize such benefits in accordance with this chapter"); *Rego Park Nursing Home v. Perales,* 206 A.D.2d 781, 615 N.Y.S.2d 773, 774 (3d Dep't 1994), citing, *Harr–Wood Nursing Home v. Perales,* 113 A.D.2d 535, 497 N.Y.S.2d 203 (3d Dep't 1986) ("[i]t is well established that Medicaid is the payor of last resort ... which means that a provider of services must first seek and exhaust payment for services rendered to an eligible recipient from all other sources including Medicare benefits"). The State claims that failure to disclose this information constitutes a violation of DSS regulations which require that a provider "take reasonable measures to ascertain the legal liability of third parties to pay for medical care and services" and to seek such reimbursement as a condition of payment. 18 N.Y.C.R.R. § 540.6(e)(1), (2), (3).

According to these regulations, neglecting to seek reimbursement from available third party resources which the provider knew or should have known about entitles DSS to seek reimbursements of any payments that should have come from these other sources. 18 N.Y.C.R.R. § 540.6(e)(7). All of these state law obligations, enabling the plaintiff to recover overpayments of Medicaid disbursements, exist without requiring an analysis of federal law. The fact that they are generally derived from a federal program, or the result of a contract mandated by federal law will not alter this result. See *Inter–American Univ.,* 716 F.2d at 934; *Foschi,* 916 F.Supp. at 240. Accordingly, the Court finds that there is no basis for federal question jurisdiction and the plaintiff's motion to remand pursuant to 28 U.S.C. § 1447(c) is granted.

In reaching this conclusion, the Court again distinguishes *Greenery Rehabilitation Group, Inc. v. Sabol,* 841 F.Supp. 58 (N.D.N.Y.1993) relied upon by LCA. In this context however, a deeper analysis is warranted. As stated above, the substantive issue in *Greenery* was whether the plaintiff was entitled to Medicaid reimbursements for services provided to three "aliens" as treatment for "emergency medical conditions."

Greenery filed suit in state court seeking a declaration that the three aliens were treated for emergency medical conditions, thereby entitling the plaintiff to Medicaid reimbursement. The case was then removed to federal court by the State and a third party complaint was filed against the Secretary, alleging that to the extent that the defendants were liable for Medicaid benefits, the Secretary "should bear part of that cost pursuant

to Federal statutes which provide that Medicaid costs are to be divided among Federal, State and Local governments." *Id.* at 60 (citations omitted).

The term "emergency medical condition" is defined under the federal Medicaid Statute as a condition

> manifesting itself by such acute symptoms of sufficient severity ... that the absence of immediate medical attention could reasonably be expected to result in—(A) placing the patient's health in serious jeopardy, (B) serious impairment to bodily functions, or (C) serious dysfunction of any bodily organ or part.

42 U.S.C. § 1396b(v)(3).

Prior to commencement of the case Greenery contacted DSS regarding its claim. The State then contacted the Secretary and inquired as to whether reimbursement was appropriate under the circumstances. The plaintiff asserted that the Secretary refused to respond. According to the defendants, it was the Secretary's "refusal to provide guidance" with respect to section 1396b(v)(3) that led to the litigation. According to the decision "it is the interpretation of *this section* which is at the heart of the present litigation." *Id.* at 61.

The *Greenery* court construed the third party defendant's motion as one to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction on two grounds. Initially, the Secretary argued that the third party complaint did not present a justiciable controversy ripe for review because there was no final agency action creating a controversy between the Secretary and the State. In rejecting this argument the court noted that the third party plaintiff had propounded interrogatories and two notices of deposition geared to determining "whether Greenery should be entitled to Medicaid payment under § 1396b(v)," the answers to which would better enable the State to demonstrate federal question jurisdiction *Id.* at 62. Accordingly, "[w]ithout such discovery, it would be wholly inappropriate for this Court to determine the issue of subject matter jurisdiction. Consequently, [the Secretary's] motion to dismiss must be denied at the present time." *Id.*

The Secretary's second argument in *Greenery* was that the State failed to exhaust its administrative remedies, and as a result, subject matter jurisdiction was lacking. Finding the issue to be one of first impression, the court reasoned that the policies underlying the exhaustion of remedies doctrine were: (1) to permit an agency to develop the factual background upon which decisions should be based; (2) to allow the agency to apply the required expertise; and (3) to obtain a final decision without premature interruption so that the agency may correct its own errors.

In determining that the doctrine was inapplicable in that third party action, the court held that the policy of avoiding premature judicial interruption was essentially moot as intervention had already occurred in the original suit. Dismissing the third party complaint would only deprive the court of the Secretary's expertise while interpreting section 1396b(v)(3) with respect to the original complaint. Accordingly, the motion to dismiss on this alternative ground was also denied.

Having reviewed the *Greenery* decision, the Court finds it distinguishable from this case. The *Greenery* court held that the case turned on the interpretation of the term "emergency medical condition" as it is defined in a federal statute, which this Court views as a clear ground to invoke federal question jurisdiction. In this case, the plaintiff alleges claims existing only under state law. It is also worth noting that the *Greenery* court was not considering a motion to remand by the plaintiff based on the original complaint. Rather, the court was considering a motion to dismiss the third party complaint without addressing the issue of a federal question.

In finding *Greenery* not to be dispositive, the Court notes the defendant's related argument that the State should somehow be estopped from claiming that there is no basis for federal jurisdiction here because in *Greenery* the State essentially conceded that "federal courts have original jurisdiction over Medicaid claims." Def.Mem. of Law at 11. The Court does not read *Greenery* so broad-

ly. As stated above, *Greenery* addressed a motion to dismiss a third party complaint in a case in which interpretation of a federal statute "was at the heart" of the litigation. There is no analogous federal question here.

■ The Court further recognizes LCA's argument that a complete review of the Medicare and Medicaid Statutes is necessary in order to determine whether the Medicaid claims should have been first submitted to Medicare in the first instance. However, as discussed above, a similar argument has already been considered and rejected in *Philip Morris,* a decision with which this Court agrees. Where a federal statute such as Medicaid requires a state to enforce liability against a third party but does not provide the ground for that liability, nor require establishment of a ground for liability, federal jurisdiction will not lie. *Philip Morris,* 942 F.Supp. at 694; *see also Inter-American Univ.,* 716 F.2d at 934 (recognizing that a federal loan program with regulations requiring participating institutions to take steps to collect delinquent loans did not serve as a basis for federal jurisdiction over state law causes of action to collect those loans). Accordingly, the State's motion to remand this case back to the Suffolk County Supreme Court pursuant to 28 U.S.C. § 1447(c) is granted.

III. *Conclusion*

Having reviewed the parties' papers, and heard oral argument, and for the reasons set forth above, it is hereby

ORDERED, that the motion of the third party defendant Secretary of Health and Human Services to dismiss the third party complaint pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction is granted; it is further

ORDERED, that the motion of the plaintiff, State of New York, to remand this case to the New York Supreme Court, Suffolk County pursuant to 28 U.S.C. § 1447(c) is granted, and the Clerk of the Court is directed to transfer all necessary documents and records to that court; and it is further

ORDERED, that the Clerk of the Court is directed to close this case.

SO ORDERED.