RHULEN AGENCY, INC.,
Plaintiff–Appellant,

v.

ALABAMA INSURANCE GUARANTY ASSOCIATION, Arizona Property and Casualty Insurance Guaranty Fund, Connecticut Insurance Guaranty Association, Florida Insurance Guaranty Association, Georgia Insurance and Insolvency Pool, Iowa Insurance Guaranty Association, Illinois Insurance Guaranty Fund, Kansas Insurance Guaranty Association, Louisiana Insurance Guaranty Association, Maryland Property and Casualty Insurance Guaranty Corporation, Massachusetts Insurers Insolvency Fund, Michigan Property and Casualty Guaranty Association,

Minnesota Insurance Guaranty Association, Nevada Insurance Guaranty Association, New Jersey Property and Liability Insurance Guaranty Association, North Carolina Insurance Guaranty Association, North Dakota Insurance Guaranty Association, Ohio Insurance Guaranty Association, Oklahoma Property and Casualty Insurance Guaranty Association, South Carolina Insurance Guaranty Association, South Dakota Insurance Guaranty Association, Tennessee Insurance Guaranty Association, Vermont Property and Casualty Insurance Guaranty Association, Washington Insurance Guaranty Association, West Virginia Insurance Guaranty Association, Wisconsin Insurance Security Fund, Defendants–Appellees.

No. 491, Docket 89–7735.

United States Court of Appeals,
Second Circuit.

Argued Jan. 10, 1990.

Decided Feb. 14, 1990.

Glen Feinberg, New York City (Of Wilson, Elser, Moskowitz, Edelman & Dicker, New York City, of counsel for Tepper, DuBois & Billig, Monticello, N.Y.), for plaintiff-appellant Rhulen Agency, Inc.

Edith K. Payne, Newark, N.J. (Of Stryker, Tams & Dill, Newark, N.J.), for defendants-appellees Alabama Ins. Guar. Ass'n, et al., (Bressler, Amery & Ross, Florham Park, N.J., of counsel).

Edward M. Cohen, New York City (Raskin & Rappoport, P.C., New York City), for defendant-appellee Maryland Property and Cas. Ins. Guar. Corp.

Before MESKILL and NEWMAN, Circuit Judges, and POLLACK, Senior District Judge.*

MILTON POLLACK, Senior District Judge.

In this suit in which jurisdiction is based on diversity of citizenship, plaintiff, the Rhulen Agency, Inc. ("Rhulen"), appeals from an order of the Southern District of New York, 715 F.Supp. 94, dismissing without prejudice its action for lack of personal jurisdiction over the defendant unincorporated associations. For the reasons appearing hereafter the order below will be affirmed but on the ground that the Court

* Honorable Milton Pollack, Senior United States District Judge for the Southern District of New York, sitting by designation.

lacks subject matter jurisdiction, which precludes consideration of the existence of personal jurisdiction.

## I.

Plaintiff Rhulen, a New York corporation, was the broker and program manager for Transit Casualty Co. ("Transit"), a Missouri insurance carrier with its principal place of business in California and authorized to do business in New York. It was Rhulen's customary practice as an agent for Transit to advance monies to the Transit customers Rhulen had obtained for Transit, when Rhulen decided that they had meritorious claims.

The defendants (referred to hereafter in short as the "Guaranty Associations") are unincorporated associations[1] created in various states throughout the country pursuant to their state statutes based upon the Post–Assessment Property and Liability Insurance Guaranty Association Model Act (the "Model Act").[2] The purpose of the Model Act is to protect policyholders and claimants through a local Guaranty Association against the insolvency of a local insurer with whom they have contracted.[3] The Guaranty Associations are comprised of all insurance companies who are authorized to write casualty and property insurance policies in the particular state. At least one member insurance company of each Guaranty Association sued herein is a citizen of New York.

The Guaranty Associations cover claims:
... which arise[ ] out of and [are] within the coverage and [are] subject to the applicable limits of an insurance policy to which this Act applies issued by an insurer ... and (a) the claimant or insured is a resident of this state at the time of the insured event, or (b) the property from which the claim arises is permanently located in this state.

Model Act § 5(6). In general, coverage of such claims is provided by the member insurance companies based upon an assessment according to the dollar amount of the premiums written on property or casualty insurance policies sold by those companies in the state. Model Act § 8(c). However, under the Model Act, the Guaranty Association itself bears liability for any such claims, not the individual members.

In the event of an insurer's insolvency, the Guaranty Association is "deemed the insurer to the extent of its obligation on the covered claims and to such extent shall have all rights, duties and obligations of the insolvent insurer as if the insurer had not become insolvent." Model Act (1)(b). The Model Act further provides that the Guaranty Association may "sue or be sued." Model Act § 8(2)(c). However, the Model Act does not designate the forum for such a suit.

Transit became insolvent and, on December 3, 1985, was ordered into liquidation. At that time Rhulen had advanced $2,724,499.30 to Transit customers for which it had not been reimbursed by Transit. Rhulen obtained assignments from these customers and brought this diversity suit in the Southern District of New York against the Guaranty Associations of the 26 foreign states in which Transit had issued insurance to customers who had made claims paid by Rhulen. None of the customers from whom Rhulen received assignments was a citizen of New York, none of

---

1. The Maryland Property and Casualty Insurance Guaranty Corporation (the "Maryland Guaranty Corporation") is a non-resident corporation, not an unincorporated association. Therefore, Maryland Guaranty Corporation may be sued herein by plaintiff without impairing diversity jurisdiction. Plaintiff and Maryland Guaranty Corporation have stipulated, however, that if the suit against the unincorporated association defendants is dismissed for lack of subject matter jurisdiction, Maryland Guaranty Corporation may also be dismissed from this suit, without prejudice, to terminate this litigation as to all parties.

2. New York apparently has not adopted the Model Act. Rather, the New York Property Insurance Underwriting Association ("New York Association") was established pursuant to the New York Insurance Law, N.Y.Ins.Law §§ 5401 et seq. (McKinney 1985 & Supp.1990), with a similar purpose as the Guaranty Associations of the foreign states.

3. The parties have stipulated in their briefs that the Court can look to the relevant provisions of the Model Act for its analysis rather than to the individual state statutes.

the underlying policies had been issued in New York and no policy covered property permanently located in New York.

The original complaint alleged state-law claims of negligent breach of statutory duty and breach of contract. Plaintiff also sought to amend its complaint by adding a claim of breach of fiduciary duty in violation of an alleged constructive trust.

Defendants moved to dismiss the suit for lack of subject matter and personal jurisdiction. Rhulen cross-moved to amend its complaint by disclaiming an intention to seek judgment "against those members of each defendant guaranty association, who at the time of the commencement of this suit" were citizens of New York for jurisdictional purposes.

In an order dated June 27, 1989, Chief Judge Brieant granted the motion to dismiss the suit, without prejudice, basing dismissal on lack of personal jurisdiction. While noting that it would be of doubtful benefit to be considered, Judge Brieant suggested that "[d]iversity jurisdiction cannot be created by assignment," citing 28 U.S.C. § 1359.

## II.

■ With the exception of the Maryland Guaranty Corporation, *see supra* n. 3, each of the Guaranty Associations is an unincorporated association. This suit is grounded on diversity jurisdiction. Diversity of citizenship, of course, must be complete. *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). "For purposes of diversity jurisdiction, an unincorporated association is said to have no citizenship of its own. Thus, if suit is brought by or against an association as an entity ..., the organization's citizenship is deemed to be the same as that of its members." 7C C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure,* § 1861, p. 217 (1986); *see also United Steel Workers of America, AFL–CIO v. Bouligny, Inc.,* 382 U.S. 145, 147, 86 S.Ct. 272, 273, 15 L.Ed.2d 217 (1965) (citizenship of unincorporated labor union for diversity purposes is the citizenship of each of its members); *Jaser v. New York Property Ins. Underwriting*

*Ass'n,* 815 F.2d 240, 242 (2d Cir.1987) ("The citizenship of an unincorporated association for diversity purposes has been determined for nearly 100 years by the citizenship of each and every member of that association."); *Baer v. United Servs. Auto. Ass'n,* 503 F.2d 393, 395 (2d Cir.1974).

Consequently, as long as the Guaranty Associations remain parties to this suit, diversity of citizenship is defeated, as at least one insurance company member of each Guaranty Association is a citizen of New York. The issue has been similarly decided by courts where a defendant unincorporated guaranty organization has members who are of the same citizenship as the plaintiff. *See Iowa Ins. Guar. Ass'n v. New England Ins. Co.,* 701 F.Supp. 177, 178–179 (S.D. Iowa 1988) (Iowa Insurance Guaranty Association, a party here); *Independent Pier Co. v. Virginia Ins. Guar. Ass'n,* No. 88–3467, slip op. at 5 n. 5 (E.D.Pa. Sept. 1, 1988) [1988 WL 92171] (Virginia Insurance Guaranty Association); *International Ins. Co. v. Virginia Ins. Guar. Ass'n,* 649 F.Supp. 58, 61 (E.D.Va.1986); *Trombino v. Transit Casualty Co.,* 110 F.R.D. 139, 144 (D.R.I. 1986) (Rhode Island Insurers' Insolvency Fund). *But cf. Ruetgers–Nease Chem. Co. v. Firemen's Ins.,* 236 N.J.Super. 473, 566 A.2d 227, 229 n. 2 (1989) (noting, without deciding, in regard to the Pennsylvania Insurance Guaranty Association "that this is not a voluntary association but a creature of Pennsylvania law given the title of 'association.' ").

Rhulen's proposed solution to the diversity problem is to disclaim in its proposed amended complaint that it is seeking recovery against the members of the various Guaranty Associations who are New York citizens. It would proceed against the Guaranty Associations with some sort of a finding that only the members that are citizens of foreign states will be liable. Rhulen, however, both in its brief and upon direct questioning at oral argument, has flatly declined to eliminate the Guaranty Associations themselves as defendants.

In support of its argument that relief can be accorded against only the non-New York

citizens, Rhulen cites *Jaser v. New York Property Ins. Underwriting Ass'n*, 815 F.2d 240 (2d Cir.1987). However, Rhulen's reliance on *Jaser* is misplaced. In *Jaser*, the New York Association's motion to dismiss for lack of diversity of citizenship was granted by the District Court, and the Court of Appeals did not disturb that dismissal. Thus, when the Court of Appeals permitted a remand for the purpose of amending the complaint to drop the New York individual members of the association, it was permitting suit to proceed only against the foreign state members as individuals, not against the New York Association. 815 F.2d at 243. Here, the plaintiff seeks to sue both the foreign state members *and* their Guaranty Associations.

New York apparently is the only state which has not adopted the Model Act. Under the provisions of the New York Insurance Law, *supra*, as supplemented by the New York Association's policy, "each member of the Association shall be a direct insurer thereunder.... Liability of each member shall be several, each for itself, and not joint...." Plan of Operation of New York Property Insurance Underwriting Association, Section IX–A—Association Policy (adopted by the Board of Directors and approved by the Superintendent of Insurance of the State of New York, successively from 1968 through April 19, 1988 for the operation of the Association). In further distinguishing *Jaser*, defendants therefore contend that under the New York Insurance Law, in contrast with the Model Act, members of the New York Association become direct insurers and directly liable for a loss. There is no provision for such several liability in the Model Act or, apparently, in any of the state statutes adopted thereunder. Under the Model Act, it is only the Guaranty Association which is liable and not the individual insurers.

This suit fails for lack of subject matter jurisdiction, as the presence of unincorporated associations as defendants, each of which has a New York member, destroys the required complete diversity of citizenship.[4]

The court below mistakenly passed on the asserted absence of personal jurisdiction over the Guaranty Association defendants. Where, as here, the defendant moves for dismissal under Rule 12(b)(1), Fed.R.Civ.P., as well as on other grounds, "the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." 5 C. Wright and A. Miller, *Federal Practice and Procedure*, § 1350, p. 548 (1969); *cf., Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946) (motion to dismiss for failure to state a claim may be decided only after finding subject matter jurisdiction). The order below may stand on the ground of lack of subject matter jurisdiction.

Affirmed.

---

**4.** In suggesting that a diversity suit brought by an assignee of claims fails for lack of subject matter jurisdiction because: "Diversity jurisdiction cannot be created by assignment," citing 28 U.S.C. 359, the District Judge misread the statute. The statute denies jurisdiction which has been "improperly or collusively made or joined to invoke the jurisdiction" of the court. Here, Rhulen was the assignee of claims by those customers to whom it had advanced money. There have been no allegations of collusion. Indeed, Judge Brieant even noted: "There is no question that plaintiff took these assignments in good faith...."