**WORLD TOUCH GAMING, INC., Plaintiff,**

v.

**MASSENA MANAGEMENT, LLC and Massena Management Corp. d/b/a President R.C.—St. Regis Management Company as Agent for Akwesasne Mohawk Casino and Akwesasne Mohawk Casino, and St. Regis Mohawk Tribe, Defendants.**

No. 99–CV–2214.

United States District Court, N.D. New York.

Oct. 13, 2000.

Plunkett & Jaffe, P.C., White Plains, NY, Robert Hermann, Patrick E. Brown, of counsel, for Plaintiff.

Cullen & Dykman, Garden City, NY, Peter J. Mastaglio, of counsel, for Defendants Massena Management LLC & Massena Management Corp.

Lehtinen, O'Donnell, Vargas & Reiner, P.A., Miami, FL, William K. Hoyt, of counsel, for Defendants St. Regis Mohawk Tribe & Akwesasne Mohawk Casino,

## MEMORANDUM–DECISION and ORDER

HURD, District Judge.

Plaintiff World Touch Gaming, Inc. ("World Touch") filed the instant action on December 22, 1999, alleging breach of contract by defendants. World Touch filed an amended complaint on May 4, 2000. Defendants Massena Management, LLC; Massena Management Corp. d/b/a President R.C.-St. Regis Management Company[1] ("Management Company"); Akwesasne Mohawk Casino ("the Casino"); and St. Regis Mohawk Tribe ("the Tribe") move to dismiss the amended complaint for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1). Plaintiff opposes the motion. Oral argument was

heard on June 9, 2000, in Utica, New York. Decision was reserved.

## I. FACTS

The Tribe is a federally-recognized American Indian Tribe whose lands, known as Akwesasne, were reserved to the Tribe by treaty with the United States. The Tribe is governed by its Constitution. In part the Constitution provides that "the Tribe is immune from suit except to the extent that the Tribal Council expressly waives sovereign immunity ...." Moreover, the Tribe's Civil Judicial Code provides, inter alia, the following:

Tribal sovereign immunity is hereby found and stated to be an essential element of self-determination and self-government, and as such will be waived by the Mohawk Tribal Council only under such circumstances as the Mohawk Tribal Council finds to be in the interests of the Tribe in promoting economic or commercial development or for other tribal purposes. Any such specific waivers of sovereign immunity as may from time to time be executed must be clear, explicit and in writing; any such waivers shall be interpreted narrowly and limited to the explicit terms of the waivers; and any such waivers shall not by implication or interpretation be extended in any manner or fashion beyond their narrow, explicit terms.

The Tribe operates a gaming enterprise, the Casino, which is a wholly owned unincorporated subsidiary of the Tribe. The Tribe operates the Casino pursuant to a gaming compact with New York State, as required by the Indian Gaming Regulation Act ("IGRA"), 25 U.S.C. §§ 2701–2721. The Tribe entered into an agreement with the Management Company, pursuant to which the Management Company would be the managing agent for the Tribe and operate the Casino under the supervision of

---

1. Massena Management LLC and Massena Management Corp., as partners, do business as President R.C.-St. Regis Management Company.

the Tribe.[2] According to the sworn testimony of Angus N. McDonald, Executive Director of the Tribe, "The Tribe has never authorized anyone form [sic] the Casino Management to waive the Saint Regis Mohawk Tribe's sovereign immunity. Such an authorization could only be made by resolution of the Tribal Council. No such resolution exists to my knowledge." (McDonald Aff. ¶ 8.)

On May 20, 1999, after some months of selection and negotiation, World Touch and the Casino entered into agreements for the lease and purchase of gallery-style pull tab gaming machines for use in the Tribe's gaming enterprise ("the Lease Agreement" and the "Sales Agreement"). Walter Horn, Senior Vice President of the Management Company, signed the Lease and Sales Agreements as the managing agent of the Casino.

The Lease Agreement provides, inter alia, that the "Lessee [Casino] agrees to waive its Sovereign Immunity from suit to enforce the provisions of this Agreement and acknowledges that this waiver allows Lessor [World Touch] the right to pursue both legal and equitable remedies as Lessor deems necessary." The Sales Agreement provides as follows:

> The parties recognize that the Tribe, being a federally recognized Indian tribe, is a sovereign entity dedicated to promoting the general welfare of its members and their descendants the blessings of liberty and freedom. Nothing in this agreement shall be construed to limit or diminish that sovereignty nor to abridge or waive any sovereign rights, privileges or immunities of the Tribe, its agencies, divisions, corporations or their respective officers and representatives. Notwithstanding the aforementioned Tribal Sovereignty the Tribe agrees to submit to the jurisdiction of the state and federal courts for the sole and limited purpose of enforcement of the obligations under this contract . . . .

The Casino was to purchase 181 machines from World Touch for a total of

---

**2.** The Management Agreement provides, in a section entitled "Manager's Term and Scope of Authority," in addition to term and expiration of term provisions, the following:

> 5.3 *MANAGER'S RESPONSIBILITIES.* All of the day-to-day operations of the Tribal Gaming Operation shall be under the exclusive control of MANAGER, subject to all requirements of IGRA, the Ordinance and the Compact. TRIBE hereby grants and delegates to MANAGER the necessary power and authority to act in order to fulfill its responsibilities pursuant to this Agreement, Including the authority to construct, manage, administer, operate, maintain and improve the gaming facilities for the conduct of Class II and Class III Gaming on the Site, as well as such other activities as are reasonably related thereto. MANAGER hereby accepts such obligations. MANAGER is hereby assigned the specific responsibility to establish operating days and hours and shall have the right to operate the Tribal Gaming Operation on the Site twenty-four (24) hours per day on every day of the year. MANAGER shall use reasonable measures for the orderly management and operation of the Tribal Gaming Operation, including cleaning, and such repair and maintenance work as is necessary; provided that all maintenance expenses shall be in accordance with MANAGER'S annual operating budget. As a further description of MANAGER'S duties and obligations hereunder and not in limitation of the same, MANAGER shall have the duty and responsibility to:

> (A) collect, receive, and receipt, for all gross sales, revenues, and/or rentals that become due and payable and collected in connection with and/or arising from the operation and management of the Tribal Gaming Operation, and shall deduct from such gross amounts expenses hereinafter provided; and,

> (B) subject to the budget provisions of Section 8.1 and 8.2 hereof, pay all sums that MANAGER deems necessary or proper for the maintenance and operation of the building and facilities, including water, insurance, heat, light, payrolls, repairs, and the like; pay all charges which become due and payable on Tribal Gaming Operation pursuant to the terms and conditions of this Agreement, or as may be determined by MANAGER; and pay such amounts as may be necessary or appropriate for Capital Items to the Tribal Gaming Operation pursuant to this Agreement.

(Def.'s Mem. Reply Ex. D.)

$1,176,500.00, to be paid in four equal installments. World Touch alleges that the second and third installment payments were made late and only after considerable collection efforts. Further, World Touch alleges that the final payment due under the Sales Agreement has not been paid.

The Casino was to lease 120 machines, and pay a twenty percent revenue sharing amount for the ninety-day term of the lease. World Touch alleges that the Casino failed to pay the June 1999 and July 1999 revenue sharing amounts when due under the Lease Agreement. While these payments were eventually made, the Casino allegedly failed to make payment of the August 1999 and September 1999 revenue sharing amounts. Additionally, World Touch alleges that the Casino is in default by its failure to purchase the leased machines after ninety days, as was required by the Lease Agreement. World Touch eventually repossessed the leased equipment. World Touch also claims that it is owed $112,236.89 by the Casino for parts and supply orders, transportation, and installation expenses, pursuant to the Lease and Sales Agreements.

For relief World Touch seeks money damages of at least $2,000,000, an accounting to determine the owed revenue sharing amounts, an injunction prohibiting operation of the machines while payment is due, and costs and attorneys fees.

## II. DISCUSSION

### A. Fed.R.Civ.P. 12(b)(1) Motion to Dismiss Standard

An action must be dismissed when the court lacks jurisdiction over the subject matter. Fed.R.Civ.P. 12(b)(1), (h)(3); *United Food & Commercial Workers Union, Local 919 v. CenterMark Properties Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir.1994). The party asserting subject matter jurisdiction has the burden of proving that such jurisdiction exists. *United Food & Commercial Workers Union, Local 919*, 30 F.3d at 301; *Greenery*

*Rehabilitation Group, Inc. v. Sabol*, 841 F.Supp. 58, 61 (N.D.N.Y.1993)(citing *Thomson v. Gaskill*, 315 U.S. 442, 62 S.Ct. 673, 86 L.Ed. 951 (1942)). When faced with a motion to dismiss for lack of jurisdiction, the party cannot "rest on [the] mere assertion that factual issues exist." *Exchange Nat'l Bank of Chicago v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976). Rather, the party asserting jurisdiction should be permitted discovery of facts relevant to the jurisdictional issue, particularly "where the facts are peculiarly within the knowledge of the opposing party." *Greenery Rehabilitation Group, Inc.*, 841 F.Supp. at 61; *see Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir.1986). The parties may submit affidavits in support of and in opposition to a jurisdictional motion, for the court's consideration. *United Food & Commercial Workers Union, Local 919*, 30 F.3d at 301; *Exchange Nat'l Bank of Chicago*, 544 F.2d at 1131; *Greenery Rehabilitation Group, Inc.*, 841 F.Supp. at 61 (citing *Kamen*, 791 F.2d at 1011). The proof of jurisdictional facts must be competent, *United Food & Commercial Workers Union, Local 919*, 30 F.3d at 301, and guidance regarding the proof can be taken from Fed.R.Civ.P. 56, *Kamen*, 791 F.2d at 1011. Finally, a motion brought pursuant to Fed.R.Civ.P. 12(b)(1) must be considered before any other motions, as a finding of lack of jurisdiction would render other objections and defenses moot. *Rhulen Agency, Inc. v. Alabama Ins. Guaranty Ass'n*, 896 F.2d 674, 678 (2d Cir.1990).

### B. Sovereign Immunity & Waiver

Defendants contend that subject matter jurisdiction is lacking due to the sovereign immunity of the Tribe, and likewise of the Casino because it is a wholly owned unincorporated enterprise of the Tribe. Plaintiff argues that the Tribe waived its sovereign immunity under the terms of both the Lease Agreement and the Sales Agreement which were signed by Walter Horn, Senior Vice President of the Management Company. In response, the defendants

argue that Walter Horn had no authority to waive the Tribe's sovereign immunity and that, as subject matter jurisdiction is lacking over the Tribe and the Casino, and they are indispensable parties, any claims against the Management Company should be dismissed pursuant to Fed.R.Civ.P. 19(b).

 The parties agree that the Tribe enjoys sovereign immunity. That being so, the Tribe is immune from suit, absent authorization by Congress, unless it has waived its sovereign immunity. *Kiowa Tribe of Oklahoma v. Manufacturing Tech., Inc.,* 523 U.S. 751, 754, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998); *see United States v. United States Fidelity & Guaranty Co.,* 309 U.S. 506, 512–13, 60 S.Ct. 653, 84 L.Ed. 894 (1940). This immunity extends to tribal enterprises. *Kiowa Tribe of Oklahoma,* 523 U.S. at 757–58, 118 S.Ct. 1700 (citing *Mescalero Apache Tribe v. Jones,* 411 U.S. 145, 93 S.Ct. 1267, 36 L.Ed.2d 114 (1973); *Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Oklahoma,* 498 U.S. 505, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991); *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996)). Thus, the Tribe and the Casino are immune from this lawsuit unless the Tribe has waived its sovereign immunity.

 World Touch points to the explicit waiver language of the Sales and Lease Agreements, signed by Walter Horn, Senior Vice President of the Management Company, in support of its position that the Tribe and the Casino waived sovereign immunity. However, according to the unequivocal language of the Tribe's Constitution and Civil Judicial Code, only the Tribal Council can waive the Tribe's sov-

ereign immunity, and such waiver must be express. The Tribal Council did not authorize Walter Horn to waive sovereign immunity, nor did the Tribal Council expressly waive the Tribe's sovereign immunity. (*See* McDonald Aff. ¶ 8.) Thus, the Tribe's sovereign immunity was not waived, and it is immune from suit.

World Touch argues first that Walter Horn had express authority to waive the Tribe's sovereign immunity, pursuant to the Management Agreement provision giving exclusive control over the day to day operations of the Casino to the Management Company. See *supra* n. 2 for the language referenced by World Touch in support of this proposition. However, giving authority to operate the Casino is not equivalent to authorizing the Management Company to waive the Tribe's sovereign immunity. The Management Agreement, which expressly authorizes the Management Company to operate the gaming enterprise, cannot be read to authorize waiver of sovereign immunity. See *supra* n. 2. Simply put, "construct, manage, administer, operate, maintain and improve the gaming facilities ... [and] such other activities as are reasonably related thereto" cannot mean "you have the authority to waive the Tribe's sovereign immunity."

Moreover, as a sophisticated distributor of gaming equipment that frequently deals with Indian gaming enterprises, World Touch should have been careful to assure that either the Management Company had the express authority of the Tribe to waive sovereign immunity, or that the Tribe itself expressly waived sovereign immunity with respect to the Sales and Lease Agreements.[3] World Touch is not a novice in

---

**3.** A perfect example of an express waiver of sovereign immunity is found in the agreement between the Tribe and the Management Company, which was signed by the President of the Management Company, and most importantly, by the Tribe. The waiver provision of the management agreement states:

10.8 *RESOLUTION OF DISPUTES; LIMITED WAIVER OF SOVEREIGN IM-*

*MUNITY.* TRIBE and MANAGER hereby covenant and agree that they each may sue or be sued to enforce or interpret the terms, covenants and conditions of this Agreement or to enforce the obligations or rights of the parties hereto in accordance with the terms and conditions set forth in this Section.

(A) *Forum.* Any action with regard to a controversy, disagreement or dispute be-

matters relating to Indian gaming enterprises and Indian sovereign immunity, and cannot now rely upon naivete to expand the reading of the Management Agreement to encompass authority to waive sovereign immunity.

World Touch argues alternatively that the Management Company had apparent authority to bind the Casino and the Tribe to all the terms of the contract, including the waiver of sovereign immunity (or a question of fact exists regarding such authority). World Touch cites authority from the law of agency in support of this argument. However, regardless of any apparent or implicit, or even express, authority of the Management Company to bind the Casino and the Tribe to contract terms and other commercial undertakings, such authority is insufficient to waive the Tribe's sovereign immunity. *See Merrion v. Jicarilla Apache Tribe,* 455 U.S. 130, 148, 102 S.Ct. 894, 71 L.Ed.2d 21 (1982)(sovereign power "remain[s] intact unless surrendered in unmistakable terms"); *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 58–59, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978)("a waiver of sovereign immunity cannot be implied but must be unequivocally expressed")(internal quotation omitted). Similarly, any argument that subsequent acts, or acquiescence in

carrying out the contract entered into with apparent authority, estop the Tribe from claiming sovereign immunity must fail. *See Merrion,* 455 U.S. at 148, 102 S.Ct. 894; *Santa Clara Pueblo,* 436 U.S. at 58–59, 98 S.Ct. 1670.

In sum, the Tribe and the Casino enjoy sovereign immunity. The Tribe has not waived its sovereign immunity. Accordingly, the action must be dismissed as against the Tribe and the Casino.

**C. Indispensable Parties under Fed. R.Civ.P. 19**

■ Defendants argue that the Tribe and the Casino are indispensable parties under Fed.R.Civ.P. 19(b). Therefore, they argue, the suit should also be dismissed as against the Management Company. Plaintiff makes no argument in opposition.

Rule 19(b) provides that in the absence of an indispensable party the court must determine "whether in equity and good conscience the action should proceed among the parties before it." Fed. R.Civ.P. 19(b). The court should consider "to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective

tween the TRIBE and MANAGER arising under this Agreement shall be brought before the appropriate United States District Court. In the event such federal court should determine that it lacks subject matter jurisdiction over any such action, such action shall be brought before the appropriate state court.

(B) *Waiver of Tribal Remedies.* TRIBE hereby expressly waives any right to proceed before any tribal court or authority of TRIBE and further expressly waives any right which it may possess to require MANAGER to exhaust tribal remedies prior to bringing an action in federal court or state court as provided above.

(C) *Limited Waiver of Sovereign Immunity.* TRIBE hereby specifically and expressly waives its sovereign immunity from suit to the extent necessary to allow MANAGER to bring any action at law or in equity to enforce or interpret the terms and conditions of this Agreement, including without

limitation the right to obtain injunctive relief and/or monetary damages as determined by a court of competent jurisdiction and to the extent necessary to allow MANAGER to bring any action at law or in equity to challenge, contest or interpret any laws, ordinances, regulations, licensing procedures or enactments of any sort by TRIBE which relate to or affect in any way the ability of MANAGER to engage in gaming under this Agreement, including without limitation the right to obtain injunctive relief and/or monetary damages as determined by a court of competent jurisdiction. Nothing contained in this Agreement shall be construed as waiving sovereign immunity in any suit for payment of damages from lands or funds held in trust for TRIBE by the United States.

(D) *Survival.* The waivers contained in this Section shall survive any termination of this Agreement.

(Def.'s Mem. Reply Ex. D.)

provision in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; [and] fourth, whether the plaintiff will have an adequate remedy if the action is dismissed" under this rule. *Id.*

The basis for this action is the Lease and Sales Agreements between World Touch and the Casino. The Management Company was not a party to the agreements, as Walter Horn signed merely as the agent of the Casino. Moreover, it was the Casino, not the Management Company, that allegedly breached the agreements and defaulted on the required payments and purchases. Accordingly, based upon a review of the record in this matter, a consideration of the requirements set forth in Fed.R.Civ.P. 19(b), and plaintiff's failure to oppose dismissal under Rule 19(b), it is determined that the Tribe and the Casino are indispensable parties and in equity and good conscience the action should not proceed with the Management Company as the sole remaining defendant. Thus, the action is dismissed as against the Management Company.

## III. CONCLUSION

The Tribe and the Casino are entitled to sovereign immunity, which they have not waived. The action must be dismissed as against these defendants pursuant to Fed. R.Civ.P. 12(b)(1). As the Tribe and the Casino are indispensable parties, the action must be dismissed as against the remaining defendant, the Management Company, pursuant to Fed.R.Civ.P. 19(b). All other motions, arguments, contentions, or defenses asserted by the parties are moot in light of the dismissal pursuant to Fed. R.Civ.P. 12(b)(1). *See Rhulen Agency, Inc.,* 896 F.2d at 678.

Accordingly, it is

ORDERED that defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and 19(b) is GRANTED and the complaint is DISMISSED in its entirety.

The Clerk of the Court is directed to enter judgment accordingly.

IT IS SO ORDERED.