IN THE

# ARIZONA COURT OF APPEALS
DIVISION TWO

_____

MM&A PRODUCTIONS, LLC,
AN ARIZONA LIMITED LIABILITY COMPANY,
*Plaintiff/Appellant*,

*v.*

YAVAPAI-APACHE NATION, A FEDERALLY RECOGNIZED INDIAN TRIBE;
YAVAPAI-APACHE NATION'S CLIFF CASTLE CASINO, A BUSINESS
ENTERPRISE OF THE YAVAPAI-APACHE NATION;
TRIBAL GAMING BOARD; AND
CLIFF CASTLE CASINO BOARD OF DIRECTORS,
*Defendants/Appellees.*

No. 2 CA-CV 2013-0051
Filed January 16, 2014

_____

Appeal from the Superior Court in Pima County
No. C20085949
The Honorable Paul E. Tang, Judge
The Honorable Carmine Cornelio, Judge

**AFFIRMED**

_____

COUNSEL

Law Office of Michael Meehan, Tucson
By Michael J. Meehan
*Counsel for Plaintiff/Appellant*

Crowell Law Offices Tribal Advocacy Group, Sedona
By Scott Crowell

William Foreman, Scottsdale
*Co-counsel for Defendants/Appellees*

---

**OPINION**

---

Presiding Judge Kelly authored the opinion of the Court, in which Judge Espinosa and Judge Eckerstrom concurred.

---

K E L L Y, Presiding Judge:

**¶1**  MM&A Productions, LLC, appeals from the trial court's judgment dismissing its contract action against the Yavapai-Apache Nation and related entities for lack of subject matter jurisdiction. It argues the court erred by concluding it had failed to show a valid waiver of the Nation's sovereign immunity, and by not allowing further discovery and holding an evidentiary hearing before ruling. We affirm.

**Factual and Procedural Background**

**¶2**  In 2008, MM&A filed a complaint against the Yavapai-Apache Nation, its tribal gaming board, the tribe's Cliff Castle Casino, and the casino's board of directors (collectively, the Nation), alleging breach of a 2006 "Exclusive Entertainment and Production Agreement" and associated claims, including breach of the implied covenant of good faith and fair dealing, unjust enrichment, tortious interference with prospective business advantage, and fraud. The complaint stated the casino's marketing director, Steven Wood, had signed the 2006 agreement with MM&A and had waived the Nation's sovereign immunity. Attached to the complaint was a copy of the contract, which had been signed on May 18, 2006, and a "Waiver of Sovereign Immunity Addendum," which Wood had signed on June 30, 2006. MM&A also attached a 2002 "Exclusive Entertainment Booking Agreement" and a 2003 "Waiver of Sovereign Immunity," both signed by a previous marketing director.

**¶3**  The Nation filed a motion to dismiss the complaint pursuant to Rule 12(b)(1), Ariz. R. Civ. P., arguing, inter alia, that the trial court lacked subject matter jurisdiction over the action because MM&A had not shown a valid waiver of the Nation's sovereign

immunity. In support of its motion, the Nation attached a copy of the Constitution of the Yavapai-Apache Nation, which states in article XIII:

> The Yavapai-Apache Tribe hereby declares that, in exercising self-determination and its sovereign powers to the fullest extent, the Tribe is immune from suit except to the extent that the Tribal Council expressly waives sovereign immunity, or as provided by this constitution.

It also provided a copy of the Cliff Castle Casino Board of Directors' Act (Board Act), adopted by the Tribal Council in 2005. The Board Act described the procedure for negotiating and approving contracts, which required either a majority vote of the Board or consent of the Tribal Council. It also stated "[a]ll contracts shall to the greatest extent possible be drafted or negotiated to include language preserving the sovereign immunity of the Nation."

¶4 The Nation submitted two declarations by the Tribal Council's Executive Secretary, which stated that she had reviewed the Tribal Council minutes from January through August 2006 and there had been no motions authorizing any casino employee to execute the 2006 contract or waiver of immunity. She further stated there had been no Tribal Council resolution to that effect in 2006 or 2007. It also attached the declaration of a casino board member, stating there was no resolution in 2006 or 2007 authorizing the board to enter into a contract with MM&A or to waive the Nation's immunity. The casino board's Administrative Assistant further declared there had been no motion from January 2006 through August 2006 for any board member or casino employee to execute the contract or a waiver of immunity. The Nation's Acting Attorney General from October 2005 through December 2006 described the approval procedure for casino contracts and stated the contract with MM&A had not been submitted to her office or approved for consideration by the board.

¶5 In its response to the Nation's motion to dismiss, MM&A argued the contract was "an explicit waiver of [the Nation's]

sovereign immunity," Wood "had at least apparent authority" to waive immunity, the Board could have delegated authority to Wood to execute the contract, the Nation's Attorney General had approved the contract, and the Tribal Council or board may have passed a resolution prior to 2006 granting Wood the authority to enter into the contract and waive sovereign immunity. In support of its contentions, MM&A attached the affidavit of its Executive Director, who had negotiated the 2006 contract, stating that Wood had told him the Nation's Attorney General had reviewed the contract and the casino's board of directors had "given him . . . authority to sign the Contract and the waiver of sovereign immunity," and that the Chairperson of the board and a Tribal Council member had told him in "conversations" that the board and council were "aware of and approved the waiver of sovereign immunity."

¶6          After a hearing on the motion, the trial court granted the Nation's motion to dismiss. The court was "not persuaded Mr. Wood possessed authority to waive the sovereign immunity of the . . . Nation and its affiliates" and concluded MM&A had failed to demonstrate the Nation had made a "valid sovereign immunity waiver." It found "the Yavapai-Apache Nation possesses a clear protocol by which a business like MM&A can secure a waiver" and MM&A had "utterly failed to avail itself of these tribal procedures."[1] This appeal followed.

## Apparent Authority to Waive Immunity

¶7          MM&A first argues the trial court erred by concluding the doctrine of apparent authority was not "available" to prove a valid waiver of the Nation's sovereign immunity. Because MM&A raises a purely legal question, we review it de novo. *See City of Tucson v. Clear Channel Outdoor, Inc.*, 218 Ariz. 172, ¶ 50, 181 P.3d 219, 233-34 (App. 2008). And although the trial court may resolve factual issues bearing on its jurisdiction, we review de novo the

---

[1]The trial court also found that MM&A was required to file this action in federal court, pursuant to the parties' agreement. Because we conclude the Nation is immune from suit, we do not reach that issue.

court's ultimate conclusion that the doctrine of sovereign immunity applies to divest the Arizona courts of jurisdiction over MM&A's claims. *See Filer v. Tohono O'Odham Nation Gaming Enter.*, 212 Ariz. 167, ¶ 5, 129 P.3d 78, 80 (App. 2006); *Mitchell v. Gamble*, 207 Ariz. 364, ¶ 6, 86 P.3d 944, 947 (App. 2004).

¶8 "Indian tribes have long been recognized as possessing common-law immunities from suit co-extensive with those enjoyed by other sovereign powers including the United States as a means of protecting tribal political autonomy and recognizing their tribal sovereignty which substantially predates [the United States] Constitution." *Pan Am. Co. v. Sycuan Band of Mission Indians*, 884 F.2d 416, 418 (9th Cir. 1989). Pursuant to the doctrine of sovereign immunity, lawsuits against Indian tribes are barred "absent a clear waiver by the tribe or congressional abrogation." *Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe*, 498 U.S. 505, 509 (1991). MM&A does not dispute that each defendant in this action, as a tribal entity or economic enterprise, is "clearly entitled to the protection of sovereign immunity." *See In re Greene*, 980 F.2d 590, 593 (9th Cir. 1992) (subordinate economic enterprise of tribe immune from suit for breach of contract); *see also Filer*, 212 Ariz. 167, ¶ 6, 129 P.3d at 80-81 (subordinate economic enterprise entitled to same immunity as tribe). But it argues it should be able to "use . . . the doctrine of apparent authority to establish that the waiver of sovereign immunity [in this case] was binding against the Nation."

¶9 As the trial court noted in its ruling, waivers of sovereign immunity are strictly construed in favor of the sovereign. *Ramey Constr. Co. v. Apache Tribe of Mescalero Reservation*, 673 F.2d 315, 320 (10th Cir. 1982). The United States Supreme Court has articulated repeatedly that a waiver of sovereign immunity "'cannot be implied but must be unequivocally expressed.'" *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978), *quoting United States v. Testan*, 424 U.S. 392, 399 (1976). In other words, the waiver must "expressly indicate[] the [tribe]'s consent" to suit. *Pan Am. Co.*, 884 F.2d at 418. In addition, "if a tribe 'does consent to suit, any conditional limitation it imposes on that consent must be strictly construed and applied.'" *Mo. River Servs., Inc. v. Omaha Tribe of Neb.*, 267 F.3d 848, 852 (8th Cir. 2001), *quoting Namekagon Dev. Co. v. Bois*

*Forte Reservation Hous. Auth.*, 517 F.2d 508, 509 (8th Cir. 1975). In this case, the Nation's Constitution states it is "immune from suit except to the extent that the Tribal Council expressly waives sovereign immunity, or as provided by this constitution." Yavapai-Apache Nation Const., art. XIII.

¶10 Federal law indicates that an Indian tribe's authorization to waive its immunity by agreement must be express, contrary to MM&A's suggestion that an official cloaked with apparent authority may execute a valid waiver absent actual authority to do so. Generally, sovereign immunity "cannot be waived by officials" in a way that "subject[s] the [sovereign] to suit in any court in the discretion of its responsible officers." *United States v. U.S. Fid. & Guar. Co. (USF&G),* 309 U.S. 506, 513 (1940); *see also Native Am. Distrib. v. Seneca-Cayuga Tobacco Co.*, 546 F.3d 1288, 1295 (10th Cir. 2008) (tribal company not equitably estopped from asserting immunity where company officials told distributor it did not need waiver because misrepresentations of tribe's officials or employees "cannot affect its immunity from suit"). This is consistent with the principle that "[c]onsent alone gives jurisdiction to adjudge against a sovereign." *USF&G*, 309 U.S. at 514.

¶11 For example, in *Memphis Biofuels, LLC v. Chickasaw Nation Industries, Inc.*, 585 F.3d 917, 918-19 (6th Cir. 2009), an energy company that had contracted with a tribal corporation produced a signed, written agreement with language expressly waiving sovereign immunity. The company believed the tribal corporation had obtained the required approval for the waiver provision from its board, but it had not. *Id.* at 922. The Sixth Circuit concluded the tribal corporation remained immune from suit, and rejected the company's attempt to prove waiver based on equitable doctrines and the fact that the tribal corporation had "signed the agreement representing that it waived sovereign immunity." *Id.* The court noted that case law had established "unauthorized acts of tribal officials are insufficient to waive tribal-sovereign immunity," despite any seemingly unfair result. *Id.* The holding in *Memphis Biofuels* later was cited with approval by the Eighth Circuit in *Amerind Risk Management Corp. v. Malaterre*, 633 F.3d 680, 688 (8th Cir. 2011).

**¶12** Similarly, the court in *World Touch Gaming, Inc. v. Massena Management, LLC*, 117 F. Supp. 2d 271, 276 (N.D.N.Y. 2000), rejected the proposition that the agency principle of apparent authority can trump the requirement of an Indian tribe's express consent to suit. In that case, World Touch filed a breach of contract action based on a sale agreement it had entered with the management company operating the St. Regis Mohawk Tribe's casino. *Id.* at 272-73. The management company's senior vice president had signed the agreement, which provided "Notwithstanding the aforementioned Tribal Sovereignty the Tribe agrees to submit to the jurisdiction of the state and federal courts for the sole and limited purpose of enforcement of the obligations under this contract." *Id.* at 273. Despite the contract's language explicitly waiving immunity, the court concluded the Tribe retained its immunity from suit because its Constitution required an express waiver of sovereign immunity by the Tribal Council and the Council had neither expressly waived its immunity nor authorized the vice president to do so. *Id.* at 275. The court rejected World Touch's argument that the management company's apparent authority to bind the casino and the Tribe to the terms of the contract could waive the Tribe's immunity, noting that any waiver must be unequivocally expressed. *Id.* at 276, *citing Santa Clara Pueblo*, 436 U.S. at 58-59.

**¶13** MM&A argues we should disregard *World Touch*, *Memphis Biofuels*, *Native American Distributing*, and other similar cases because it disagrees with their reasoning. It argues those cases employed a "flawed analysis" by relying on cases that discuss whether a waiver's language was express—rather than whether the authority to waive immunity was express. However, we cannot agree with MM&A's suggestion that these cases confuse or improperly extend the principle that a waiver of immunity must be unequivocally expressed. Express authorization and express language are two distinct but related issues, and requiring an express delegation of a tribe's authority to waive its immunity is a logical and consistent application of the overarching principle encompassing both issues: that the tribe itself must expressly consent to a waiver of its immunity. *See Santa Clara Pueblo*, 436 U.S.

at 58; *Pan Am. Co.*, 884 F.2d at 418.  To hold otherwise would result in waivers that could not be traced to any explicit action by a tribe.

**¶14**　　　MM&A urges us instead to adopt the reasoning of a Colorado state court appellate decision, *Rush Creek Solutions, Inc. v. Ute Mountain Ute Tribe*, 107 P.3d 402, 404 (Colo. App. 2004), in which the Chief Financial Officer (CFO) of the Ute Mountain Ute Tribe executed a contract that expressly waived the Tribe's immunity.  In *Rush Creek*, the court disagreed with *World Touch* and applied apparent authority principles to hold that, where the CFO was authorized to execute contracts on behalf of the Tribe, and where the Tribe's constitution and policies were silent concerning procedures for signing contracts or waiving immunity, the CFO could validly waive the Tribe's immunity.  *Id.* at 406-08.  MM&A also notes that a Supreme Court of Nebraska decision, *StoreVisions, Inc. v. Omaha Tribe of Nebraska*, 795 N.W.2d 271, 278-80 (2011), adopted the reasoning of *Rush Creek* and applied agency principles, including apparent authority, to find a valid waiver where the tribal chairman had executed a waiver in the presence of five of seven tribal council members.

**¶15**　　　Even assuming that applying *Rush Creek*'s reasoning to this case would change the outcome of the motion to dismiss,[2] we decline to adopt its reasoning as contrary to the weight of controlling law.  In deciding whether tribal sovereign immunity has been waived, federal law controls and cannot be diminished by the states.  *Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751, 756 (1998) ("[T]ribal immunity is a matter of federal law and is not subject to diminution by the States.").  As noted above, we agree with cases such as *Memphis Biofuels*, *Native American Distributing*, and *World Touch* that it would be inconsistent with United States Supreme Court precedent to apply equitable principles such as apparent authority to defeat a sovereign's immunity from suit.  *See Santa Clara*

---

[2]The Nation disputes this proposition, noting that *Rush Creek* relied on facts that do not exist in this case, including the official's authority to contract on behalf of the sovereign, and silence in the tribe's constitution and bylaws regarding waivers of immunity.  *See* 107 P.3d at 404, 407.

*Pueblo*, 436 U.S. at 58; *Pan Am. Co.*, 884 F.2d at 418 (requiring tribe's express consent to waiver).

**¶16** Moreover, as the trial court noted, *Rush Creek* appears to represent the minority view even among state case law on the issue. *See, e.g., Hydrothermal Energy Corp. v. Fort Bidwell Indian Cmty. Council*, 216 Cal. Rptr. 59, 63 (App. 1985) (tribal chairman could not waive tribe's immunity absent express delegation of duty from tribe); *Dilliner v. Seneca-Cayuga Tribe*, 258 P.3d 516, ¶¶ 17, 19 (Okla. 2011) (rejecting equitable theories as basis for waiver; where tribal council authorized Chief to execute contracts, but not waive immunity, express waivers in those contracts were not effective); *Chance v. Coquille Indian Tribe*, 963 P.2d 638, 640-42 (Or. 1998) (rejecting apparent authority theory and holding that, even if contract's language waiving immunity was express, contract not valid where signing official lacked authority under tribal law to waive immunity); *Calvello v. Yankton Sioux Tribe*, 584 N.W.2d 108, ¶ 12 (S.D. 1998) (without clear expression of waiver by tribal council, acquiescence of tribal officials cannot waive immunity because "waiver must be clear and unequivocal and must issue from a tribe's governing body, not from unapproved acts of tribal officials").

**¶17** MM&A also raises policy concerns regarding the requirement of an express delegation of authority to waive sovereign immunity. It contends such a rule "would unduly expand Indian sovereign immunity at a time when its very existence, albeit adhered to by the Supreme Court which created it, is questioned." In support, it notes that the United States Supreme Court in *Kiowa Tribe* expressed concern about "the wisdom of perpetuating the doctrine" of tribal immunity from suit because it extends beyond what is necessary to protect tribal self-governance. 523 U.S. at 758. Nonetheless, the *Kiowa* court rejected an invitation to abrogate the principle of sovereign immunity, reserving such decisions to Congress, which "is in a position to weigh and accommodate the competing policy concerns and reliance interests." *Id.* at 758-59. Likewise, we decline the invitation to apply apparent authority principles to waivers of sovereign immunity in order to ameliorate its effects, recognizing that "Indian sovereignty, like that of other sovereigns, is not a discretionary principle subject to the vagaries of

the commercial bargaining process or the equities of a given situation." *Pan Am. Co.*, 884 F.2d at 419 (responding to argument that contract implying waiver was "trap" for unsuspecting party). To the extent the trial court implied it would not find a valid waiver of the Nation's sovereign immunity based on a theory of apparent authority, it did not err.

## Request for Discovery and Evidentiary Hearing

**¶18** MM&A argues independently that this action should be remanded for further discovery and an evidentiary hearing, "at least on the basis of actual authority." The trial court has broad discretion to resolve discovery matters, which we will not disturb absent a showing of abuse. *Braillard v. Maricopa Cnty.*, 224 Ariz. 481, ¶ 52, 232 P.3d 1263, 1279 (App. 2010); *cf. Simon v. Safeway, Inc.*, 217 Ariz. 330, ¶ 4, 173 P.3d 1031, 1033 (App. 2007) (we review for abuse of discretion court's ruling on Rule 56(f), Ariz. R. Civ. P., motion requesting further discovery before ruling on motion for summary judgment). The court's discretion in matters of discovery includes "the right to decide controverted factual issues, to draw inferences where conflicting inferences are possible and to weigh competing interests." *Brown v. Superior Court*, 137 Ariz. 327, 331-32, 670 P.2d 725, 729-30 (1983). The court abuses its discretion if it makes an error of law or the record does not provide substantial support for its decision. *Braillard*, 224 Ariz. 481, ¶ 52, 232 P.3d at 1279.

**¶19** "When 'jurisdictional fact issues are not intertwined with fact issues raised by a plaintiff's claim on the merits, the resolution of those jurisdictional fact issues is for the trial court.'" *Moulton v. Napolitano*, 205 Ariz. 506, ¶ 8, 73 P.3d 637, 641-42 (App. 2003), *quoting Swichtenberg v. Brimer*, 171 Ariz. 77, 82, 828 P.2d 1218, 1223 (App. 1991). To resolve those issues, the court may consider affidavits, depositions, and exhibits, and does not thereby transform a motion to dismiss into a motion for summary judgment. *Id.* In reviewing the court's determination, we view the record in the light most favorable to upholding its ruling, "inferring any necessary findings reasonably supported by the evidence, and keeping in mind that the burden of demonstrating jurisdiction lies with the Plaintiffs." *Id.*

**¶20** MM&A argues it made a "sufficient showing to require deferral" of a decision on the issue of the trial court's jurisdiction. Specifically, it notes that the Board Act clearly implied a person authorized to execute contracts also had permission to waive the Nation's sovereign immunity, and that MM&A "had been engaged in successive contracts for seven years, which the defendants recognized, honored, and paid," suggesting the 2006 contract had been signed with authority. It urges that "evidence of actual delegation by the Casino Board . . . [wa]s key to the issue of waiver." And it suggests the trial court's denial of its request for further discovery and an evidentiary hearing was contrary to the "expectation[s]" regarding discovery articulated in *Gatecliff v. Great Republic Life Insurance Co.*, 154 Ariz. 502, 744 P.2d 29 (App. 1987).

**¶21** *Gatecliff* provides that, "[w]hen the court's subject matter jurisdiction is challenged pursuant to Rule 12(b)(1), the court may take evidence and resolve factual disputes essential to its disposition of the motion," noting that the existence of a factual dispute therefore does not require denial of the motion. *Id.* at 506, 744 P.2d at 33. It also noted that a court "may . . . conduct an evidentiary hearing if necessary" to resolve a challenge to its personal jurisdiction. *Id.* MM&A concedes that nothing in *Gatecliff* requires the court to hold an evidentiary hearing or narrows the court's discretion to control the scope of discovery. *See Moulton*, 205 Ariz. 506, ¶ 8, 73 P.3d at 641-42 (court has discretion to determine whether evidentiary hearing necessary).

**¶22** Before making its ruling, the trial court held a hearing on the motion where the parties discussed the evidence that had been submitted on the motion to dismiss and supplemental affidavits filed by MM&A. Substantial evidence supported the trial court's determination that the Nation had not, by virtue of the 2006 Waiver of Sovereign Immunity Addendum, waived its immunity as to the 2006 contract.

¶23 The Board Act, adopted by the Tribal Council in 2005, stated in relevant part:

> **SECTION XIV. Contracts; Authority; Limited Waiver of Sovereign Immunity; Mandatory Provisions**
>
> 1. The Board shall have the power to negotiate and approve contracts for the expenditures of funds within the approved budgets of the Board, Cliff Castle Casino and Cliff Castle Lodge and Conference Center, subject to review by the Office of the Attorney General.
>
> 2. The Chairperson of the Board is hereby delegated the authority to execute contracts approved by majority vote of the Board subject to the requirements and restrictions in this section.
>
> 3. No contracts obligating expenditure of funds outside the approved budgets of the Board, Cliff Castle Casino or Cliff Castle Lodge and Conference Center shall be approved without prior consent of the Council.
>
> 4. All contracts shall to the greatest extent possible be drafted or negotiated to include language preserving the sovereign immunity of the Nation.

It also provided that "[a]ll official actions of the Board shall be taken by motion or resolution approved by the affirmative vote of a majority of those Directors present at a meeting." Therefore, even assuming a valid contract could waive the Nation's sovereign immunity, the Tribal Council authorized contracts to be executed only with the approval of a majority vote of the board or with the Tribal Council's prior consent.

¶24        Viewed in the light most favorable to upholding the trial court's ruling, *Moulton*, 205 Ariz. 506, ¶ 8, 73 P.3d at 642, the evidence established that neither the 2006 contract nor the waiver addendum was approved by the casino's board or the Tribal Council. The Nation submitted two declarations of the Tribal Council's Executive Secretary. She stated that, since 1992, she has been responsible for ensuring that all council motions and their outcomes are recorded in the minutes. She had reviewed all minutes from Tribal Council meetings from January through August 2006, and there were no motions "to approve the Tribal Council Chairman, The Cliff Castle Casino Board of Directors, or any other Board member or Casino employee (including Mr. Steven Wood), to execute an exclusive entertainment and production agreement, or to execute a waiver of sovereign immunity addendum to such agreement." She also declared "there exists no resolution [in 2006 or 2007] authorizing the Nation, the Tribal Council, or any Nation entities or individual employees to enter into a contract with MM&A Productions, LLC or to otherwise waive the Nation's sovereign immunity in favor of MM&A Productions."

¶25        A member of the casino's board declared she had searched all Board resolutions enacted from 2006 through 2007 and "there exists no resolution authorizing the Board, the Chairman of the Board, or any individual Cliff Castle employees to enter into a contract with MM&A Productions, LLC or to otherwise waive the Nation's sovereign immunity in favor of MM&A Productions." The casino board's Administrative Assistant further declared that she had reviewed all board minutes from January 2006 through August 2006 and that there was no "motion for the Chairman, or any other Board member or Casino employee (including Mr. Steven Wood), to execute an exclusive entertainment and production agreement, or to execute a waiver of sovereign immunity addendum to such agreement on behalf of the Board, the Casino or the Nation, in favor of MM&A [P]roductions." Additionally, the Nation's Acting Attorney General from October 2005 through December 2006 declared that she was responsible for ensuring compliance with the casino Board of Directors Act. She stated her office had applied a "green sheet" approval procedure to all casino contracts, under which her signature was required on a green form attached to all

proposed contracts before the casino board could vote to approve the contract. She stated Wood was advised of the procedure, and the 2006 contract with MM&A was not submitted to her office or approved for consideration by the board.

¶26 The Board Act does not authorize the board to allow an individual employee to execute contracts or waive the Nation's immunity. To the contrary, it prescribes a clear procedure that requires accountability to and oversight by a majority of the board or the Tribal Council, depending on the size of the contract. Therefore, MM&A's speculation that the board could have, at some point in time not covered by the affidavits, delegated authority to Wood to take those actions is contrary to the evidence in the record. For the same reasons, it is not only speculative but contrary to the evidence to suggest the Tribal Council itself would have delegated authority to a casino employee to waive its immunity only one year after passing a Board Act that maintains careful oversight over casino contracts. Based on the evidence in the record, and in light of the presumption against finding waivers of sovereign immunity, *Demontiney v. United States ex rel. Dep't of Interior*, 255 F.3d 801, 811 (9th Cir. 2001), we cannot say the trial court abused its discretion in concluding further discovery was unnecessary to reach the conclusion that the Nation had not waived its immunity.

¶27 MM&A additionally argues the evidence was "incomplete" because it "did not cover the entire relevant time period." It notes that it attached to its complaint a copy of a 2003 waiver of sovereign immunity, which stated the "Tribe hereby expressly and irrevocabl[y] waives its sovereign immunity from any breach or alleged breach in connection with Tribe's obligations and considerations under any and all the Contract(s) between Tribe and Producer, including but not limited to . . . Exclusive Agreement(s)." The Nation's affidavit evidence does not cover the time period that would be relevant to that waiver, and the Board Act in evidence was not effective until 2005. Therefore, we address separately whether the trial court erred by concluding further discovery was not necessary to determine whether the 2003 purported waiver had waived the Nation's immunity as to the 2006 contract.

¶28　　　There is a strong presumption against finding a waiver of tribal sovereign immunity. *Demontiney*, 255 F.3d at 811. Any waiver of an Indian tribe's sovereign immunity "must be strictly construed in its favor." *Beltran v. Harrah's Ariz. Corp.*, 220 Ariz. 29, 35-36, 202 P.3d 494, 500-01 (App. 2008); *S. Unique, Ltd. v. Gila River Pima-Maricopa Indian Cmty.*, 138 Ariz. 378, 383, 674 P.2d 1376, 1381 (App. 1983).

¶29　　　Although the trial court did not address the issue specifically in its ruling, its implied finding that it properly could determine the issue of waiver without collecting further evidence of the board's and Tribal Council's actions during 2003 or other years was appropriate. The 2003 waiver applied to "any and all the Contract(s) between Tribe and [MM&A]." Although it does not explicitly exclude future contracts, neither does it include them. MM&A provided evidence that the casino's former marketing director had signed at least one contract in 2002, and it is a reasonable reading of the waiver that it was intended to apply only to existing contracts. Therefore, construing the waiver strictly in favor of preserving the Nation's immunity, a 2003 waiver signed by one marketing director was insufficient to waive the Nation's immunity regarding a contract executed over three years later and signed by a different director. Therefore, whether or not the previous director had authority to sign the 2003 waiver would not have affected the outcome of this case, and the court did not abuse its discretion in determining further discovery on that issue was unnecessary.

## Disposition

¶30　　　For the foregoing reasons, the trial court's judgment is affirmed.